FRANK J. PALKA *v.* RALPH H. WALKER.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued March 3d—decided April 5th, 1938.

*Maurice A. Gruskay,* for the appellant (plaintiff).

122

*Lorin W. Willis,* State's Attorney, for the appellee (defendant).

MALTBIE, C. J.   On October 15th, 1936, the plaintiff was found guilty of first degree murder and sentenced to be executed on February 15th, 1937.   He took an appeal to this court and thereupon the Governor issued a reprieve which expired on May 26th, 1937.   The plaintiff's appeal to this court having been decided against him, he filed with the Chief Justice a petition for an appeal to the Supreme Court of the United States, which was allowed, and as incident thereto execution of the sentence was stayed until December 15th, 1937.   On May 12th, 1937, the Governor granted a further reprieve also expiring on December 15th, 1937.   The plaintiff's appeal to the Supreme Court of the United States was decided adversely to him on December 6th, 1937, but under the rules of that court a mandate under the decision would not issue for twenty-five days thereafter.   Accordingly, on December 10th, 1937, the Governor issued a further reprieve which would expire on February 1st, 1938, and a warrant issued for execution of sentence on that day.   In this proceeding the claim of the plaintiff is that the Governor had no power to grant any reprieve for a longer period than the end of the session of the General Assembly next after the conviction of the accused, which would be the General Assembly convening in January, 1937, and which, under the 35th amendment to the Constitution, was required to adjourn without day on the Wednesday after the first Monday in June of that year; that therefore the reprieve granted to the plaintiff on December 10th, 1937, until February 1st, 1938, was unlawful and that, the time legally set for the execution of sentence having passed. the plaintiff is now unlawfully confined.

Our Constitution provides: "The Governor shall have power to grant reprieves after conviction, in all cases except those of impeachment, until the end of the next session of the General Assembly, and no longer." Article Fourth, Sec. 10. It contains no express authority to any person or body to grant pardons or commutations of sentence. For many years previous to its adoption the statutes had provided "that the General Court only shall have power, upon the grounds to them satisfying, to grant pardons, suspensions, and gaol delivery upon reprieve, in capital and criminal cases, unto any person or persons that have been sentenced in any other court whatever in this State." Statutes of 1808, p. 202. After the adoption of the Constitution the statutes were revised and many laws were repealed or omitted, among them the one we have quoted. No doubt the reason for this was that the powers included in the statute were considered to be within the general provision which vested the legislative power in the General Assembly. This is apparent from the fact that an examination of the special acts of the General Assembly from 1837, when they were first printed in an unabridged form, until the establishment of the board of pardons in 1883, shows that at every session clemency was extended by the General Assembly to prisoners. The acts usually took the form of releases or discharges from prison or jail; but in at least three instances, in two of which the prisoners were apparently awaiting trial, pardons were granted; in several instances sentences to death were commuted to life imprisonment; in one instance the time for execution of a death penalty was postponed for a few months; and in one the basis of a resolution restoring the forfeited rights of a prisoner released from prison by a contemporaneous resolution was expressly stated to be that the General Assembly

had found him innocent of the crime charged. The thought in the minds of the makers of the Constitution in giving the Governor the power to grant reprieves until the end of the next session of the General Assembly was evidently that if, upon the facts before him, he believed that the General Assembly should have an opportunity to determine whether to extend clemency to a prisoner beyond a merely temporary stay of execution, a reprieve might be granted until the Assembly had had an opportunity to act in the matter.

On the other hand, the limitation that a reprieve could be granted only to the end of the next session of the General Assembly was evidently because the reprieve was intended to operate only until the General Assembly had had a full opportunity to consider the matter. The word "next" in the constitutional provision does not refer to a session of the General Assembly in existence when a reprieve is granted but to one which begins thereafter. *French* v. *Barnard,* 63 Mass. (9 Cush.) 403; *Shelburne* v. *Eldridge,* 10 Vt. 123, 125; *State* v. *Breaw,* 45 Ore. 586, 588, 78 Pac. 896; *Heywood* v. *State,* 125 Ga. 262, 264, 54 S. E. 187. A reprieve properly granted during a session of the Legislature may run until the end of the first session which thereafter convenes. In the case before us the first reprieve, granted before the convening of the General Assembly of 1937, expired before the end of that session; the second reprieve, granted during the session, expired before the following session convened; and the third, granted after the close of the session of 1937 expired before the beginning of that of 1939. None of these reprieves exceeded the grant of power to the Governor, unless the plaintiff is correct in his claim that the limitation as to the duration of the reprieve runs from the conviction of the accused, so

that in no event could a reprieve or reprieves be granted which would run beyond the end of the session of the General Assembly next after that conviction.

The question presented is whether the limitation upon the period during which execution may be stayed by a reprieve runs from the date of the conviction or from that when the reprieve is granted. In the first place, the ordinary rules of grammatical construction indicate that the phrase "after conviction" modifies the verb "grant" rather than the phrase "until the end of the next session of the General Assembly," particularly as that follows the parenthetical clause "except those of impeachment." Again, had the makers of the Constitution intended that the period of reprieve allowed should run from the date of conviction, they could very easily have so indicated by inserting the word "thereafter" after the words "General Assembly," and it would have been natural for them to do so. Thus the constitution of New Jersey, Article 5, § 9, gives the Governor the power "to grant reprieves, to extend until the expiration of a time not exceeding ninety days after conviction." There is in the language of the provision in question nothing which indicates, much less compels, the conclusion that no reprieve could be granted which would postpone execution of a sentence beyond the end of the session of the General Assembly next after the conviction.

A reprieve does no more than stay the execution of a sentence for a time; it is ordinarily an act of clemency extended to a prisoner in order to afford him an opportunity to procure some amelioration of the sentence which has been imposed upon him. Often the purpose is to enable him to take advantage of remedial measures which may result in his being pardoned of the offense of which he has been convicted, or in

a commutation of sentence, or in an opportunity to present his case for review before an appellate tribunal or to secure a new trial. Any limitation upon the power of the Governor to grant reprieves which would defeat the full opportunity of a prisoner to present to proper authorities any ground for relief of this nature he may have is necessarily against the interest of those convicted of crime. A construction of the constitutional provision which would jeopardize these purposes would do violence to the intent of the makers of the Constitution. Yet a moment's reflection suggests situations where to construe the provision as the plaintiff would have us do might defeat those purposes. For instance, the day set by the court for the execution of a sentence of one convicted just before a session of the General Assembly convenes might be beyond the time when under the Constitution that session must adjourn, or a reprieve granted by the Governor might expire just before that adjournment, and in either case at the very end of the session some cause might arise making a further stay of execution proper, as, for example, confession by another person that he had actually committed the crime. Theoretically it is true the General Assembly is capable of acting in the matter up to the very moment of adjournment, but anyone familiar with legislative processes knows how difficult if not impossible it would be to secure such action in the very last days of the session. To construe the Constitution as the plaintiff seeks to have us do, would in such a case very likely deny to an accused in such a situation as that we have suggested relief to which he might clearly be entitled.

The underlying purpose of the constitutional provision was, it is true, not to give the Governor power indefinitely to postpone execution in a capital case,

but it certainly was to afford a defendant an opportunity to present to the proper authorities any grounds he might have to claim a pardon or commutation of sentence or a further hearing. In the absence of any clear indication of a different intent, the provision in question is to be construed to give effect to that purpose. "A constitutional provision should not be construed so as to defeat its evident purpose, but rather so as to give it effective operation and suppress the mischief at which it was aimed." *Jarrolt* v. *Moberly,* 103 U. S. 580, 586; *McGovern* v. *Mitchell,* 78 Conn. 536, 561, 63 Atl. 433. That can only be done as regards the provision before us by interpreting it as meaning that the limitation upon the period during which a reprieve may operate runs, not from the day of conviction, but from the time when the reprieve is issued. It is true, as the plaintiff suggests, that such a construction might enable the Governor, by successive reprieves, indefinitely to postpone execution of a sentence. We cannot believe that a Governor would so misuse his power as to produce such an unjustifiable result. Any danger of that kind cannot offset the sacrifice of the interests of the prisoner, or the defeat of the underlying purpose of the constitutional provision, which might otherwise result. Certainly the reprieves granted the plaintiff in May and December, 1937, based, when the former was granted, upon the fact that he had taken an appeal to the Supreme Court of the United States and, when the latter was granted, that the appeal had not reached a final conclusion, were amply justified.

The Supreme Court of Nebraska has had a very similar question before it. One Simmons having been found guilty of first degree murder and having appealed, his execution was finally set for May 23d, 1934. Thereafter he filed an application for a writ of

certiorari to the United States Supreme Court. The Governor granted a number of reprieves during the pendency of the proceeding, the last one expiring on August 11th, 1935. The constitution of Nebraska provides that "the Governor shall have power to grant respites or reprieves in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment, but such respites or reprieves shall not extend beyond the next meeting of the board of pardons, and in no case for a greater period than thirty days." The court denied relief to Simmons in a proceeding similar to the one before us, saying of the constitutional provision in question that "it was intended to limit the powers of the Governor, as to the time of any one reprieve, to a period which should not exceed thirty days, nor extend beyond the time of the next meeting of the board of pardons. It certainly was not intended to prevent the granting of more than one reprieve. It is not reasonable to presume that the constitutional provision, above quoted, would limit the power of the Governor so that successive reprieves could not be granted where the exigencies of the case called for more than one reprieve. The petitioner's application to the United States Supreme Court for a writ of certiorari was pending and undisposed of. The theory that successive reprieves could not be granted until such application had been passed upon is untenable." *Simmons* v. *Fenton,* 113 Neb. 768, 770, 205 N. W. 296. Our conclusion is that the Governor had power to grant the reprieves and that the plaintiff is not illegally detained but is being properly held until the day finally set for his execution arrives, when the death penalty can lawfully be inflicted upon him.

There is no error.

In this opinion the other judges concurred.