MICHAEL M. MCLAUGHLIN *v.*
GEORGE BRONSON, WARDEN
(13110)

PETERS, C. J., HEALEY, SHEA, COVELLO and HULL, Js.

Argued November 6, 1987—decision released February 16, 1988

*Benjamin Smith,* for the appellant (petitioner).

*Carl J. Schuman,* assistant attorney general, with whom were *L. D. McCallum,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellee (respondent).

HULL, J. The petitioner, Michael M. McLaughlin, appeals from a decision denying his motion for summary judgment and granting the state's motion for summary judgment in his habeas corpus proceedings. We find no error.

The following facts are undisputed. The petitioner was convicted of murder in 1976 and sentenced to a term of imprisonment of twenty years to life. In 1982, he was sentenced to a consecutive term of nine months for attempted escape. During his incarceration, he married Eileen McLaughlin. In 1985, the petitioner applied to the board of pardons (board) for a commutation of the minimum term of his sentence to time served. On April 1, 1985, the board conducted a hearing at which Mrs. McLaughlin testified, representing that she was a graduate of Princeton and Yale Universities and a third year medical student at Yale. The board, pursuant to General Statutes § 18-26,[1] granted the commutation making the petitioner immediately eligible for parole. The board of parole (parole board) granted the petitioner parole to his sentence for attempted escape, effective July 15, 1985.

Following these events, the New Haven Register reported that Mrs. McLaughlin had misrepresented her educational achievements. The state thereupon filed with the board an application to revoke the pardon. On June 17, 1985, the parole board suspended the petitioner's parole pending review by the board of pardons.

The board of pardons conducted a hearing on October 7, 1985, at which the petitioner and his wife were present and testified. Mrs. McLaughlin acknowledged that her educational claims were a complete fabrication but asserted that, because of psychiatric problems, she believed them to be true at the time she made them. The evidence was inconclusive with respect to the petitioner's knowledge of his wife's misrepresentations. The board revoked the commutation on Decem-

---

[1] General Statutes § 18-26 provides in relevant part: "JURISDICTION. (a) Jurisdiction over the granting of, and the authority to grant, commutations of punishment or releases, conditioned or absolute, in the case of any person convicted of any offense against the state and commutations from the penalty of death shall be vested in the board of pardons."

ber 16, 1985. In its memorandum of decision, the board expressed its concern that the environment into which the petitioner would be released was "diametrically opposed" to that which had been anticipated at the April hearing. The board specifically found that the "[p]etitioner is confronted with a wife who has either lied to him for several years or, alternatively, who has severe emotional and psychological problems. This fact, coupled with the inherent difficulty in re-adjusting to civilian life, would place Petitioner in an unusually stressful situation." The board concluded that the factual basis upon which it relied in granting the commutation was substantially different from that presented at the April hearing. Revocation of commutation was made without prejudice to the petitioner's reapplying to the board in April, 1986. On January 7, 1986, the parole board withdrew the petitioner's parole on the ground that his eligibility for parole had been negated by the revocation of his commutation. The petitioner did not reapply for a commutation.

The petitioner sought a writ of habeas corpus on the ground that the board was without jurisdiction to revoke the commutation. The petitioner moved for summary judgment and the state also filed a motion for summary judgment. The trial court granted the state's motion and denied the petitioner's motion, holding that the board had the power to revoke commutations. The petitioner appealed to the Appellate Court and, pursuant to Practice Book § 4023, we transferred the case to this court.

The petitioner advances the following claims of error: (1) the board of pardons was without jurisdiction to revoke the commutation; (2) General Statutes § 18-26 is vague and overbroad; (3) the board of pardons failed to comply with the Uniform Administrative Procedure Act, General Statutes §§ 4-166 through 4-189; (4) the parole board violated his right to procedural due pro-

cess when it revoked his parole without a hearing; and (5) the trial court erred in denying his motion for default. The respondent argues that the second, third and fourth claims of error are not properly before this court because the petitioner failed to raise them in the trial court and does not seek review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). The respondent also contends that the fifth claim of error is not properly before this court because the record contains no ruling by the trial court on that claim and the petitioner did not move for articulation or otherwise act to complete the record. The petitioner disputes each of these arguments. We agree with the respondent that only the first claim of error is reviewable.

I

Whether a board of pardons may revoke an absolute commutation of sentence[2] prior to actual release of the prisoner is a question of first impression in Connecticut. General Statutes § 18-26 (a) confers upon the board jurisdiction and authority to grant conditional or absolute commutations. As the petitioner correctly notes, the statute makes no express provision for revocation. We disagree with him, however, that the lack of such an express provision deprives the board of authority to revoke a commutation. Rather, we hold that the board may revoke an absolute commutation, prior to actual release of the prisoner, if the factual basis upon which the commutation was granted proves to be erroneous, and the justification for granting the commutation is thereby abrogated.

Commutation of sentence is the substitution of a lesser punishment for that to which a person has been sentenced. *Schick* v. *Reed,* 419 U.S. 256, 273, 95 S. Ct.

---

[2] We consider the legality of revoking an absolute or unconditional commutation only. The propriety of revoking a conditional commutation is not before the court in this case.

379, 42 L. Ed. 2d 430, reh. denied, 420 U.S. 939, 95 S. Ct. 1150, 43 L. Ed. 2d 416 (1974) (Marshall, J., dissenting); *Biddle* v. *Perovich,* 274 U.S. 480, 483, 47 S. Ct. 664, 71 L. Ed. 1161 (1927); 59 Am. Jur. 2d, Pardon and Parole § 5 (1987). Power to commute a sentence is part of the pardoning power, under which it may be exercised. 59 Am. Jur. 2d, Pardon and Parole § 23 (1987). Ordinarily, the pardoning power resides in the executive. *Dumschat* v. *Board of Pardons,* 432 F. Sup. 1310, 1312 (D. Conn. 1977) *(Dumschat I),* aff'd, 593 F.2d 165 (2d Cir. 1979), remanded, 618 F.2d 216 (2d Cir. 1980), rev'd, 452 U.S. 458, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981). In Connecticut, the pardoning power is vested in the legislature; *Palka* v. *Walker,* 124 Conn. 121, 198 A. 265 (1938); which has delegated its exercise to the board of pardons. *Dumschat* v. *Board of Pardons,* 452 U.S. 458, 463, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981) *(Dumschat II).* Granting of a commutation is an act of clemency. *State* v. *Walters,* 145 Conn. 60, 72–73, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45 (1958). Section 18-26 creates no right or entitlement that may be claimed by any prison inmate. *Dumschat II,* supra, 467. Furthermore, the statute vests in the board unfettered discretion in making its pardon and commutation decisions; it imposes no definitions, no criteria and no mandates giving rise to a duty to commute a sentence or grant a pardon, or creating a constitutional entitlement to an exercise of clemency. Id., 466. There exists no right to judicial review of denial of commutation. *State* v. *Walters,* supra, 73.

The power to revoke a commutation is neither expressly granted nor expressly proscribed by § 18-26. No Connecticut case has before addressed the legality of revocation of an absolute pardon or commutation. In other jurisdictions, it is generally agreed that a pardon or commutation procured by fraud may be revoked.

67A C.J.S., Pardon and Parole § 35; 2 F. Wharton, Criminal Procedure (10th Ed. 1918) § 1469. This is consistent with the general rule that judgments and written instruments obtained by fraud are void. *Rathbun* v. *Baumel,* 196 Iowa 1233, 1239, 191 N.W. 297 (1922); *Adkins* v. *Commonwealth,* 232 Ky. 312, 319-20, 23 S.W.2d 277 (1929). Some courts have upheld revocation in the absence of fraud, but where a mistake had been discovered. See, e.g., *People ex rel. Presser* v. *Lawes,* 221 App. Div. 692, 225 N.Y.S. 53 (1927) (governor not informed of prisoner's escape); *Ex parte Ray,* 18 Okla. Crim. App. 167, 193 P. 635 (1927) (governor misinformed about prisoner's release date).

Some jurisdictions have held that a duly executed and delivered pardon may be revoked by resort to a court of equity; such proceedings serve to protect the valid judgments of the courts and do not interfere with the prerogative of the pardoning authority. *Rathbun* v. *Baumel,* supra; *Adkins* v. *Commonwealth,* supra. Other courts have stated that the pardoning authority possesses the power to revoke a commutation. *People ex rel. Presser* v. *Lawes,* supra, 693 ("[h]aving the power to grant commutation, and to select those to whom it is to be extended, [the governor] may revoke a commutation, once granted, at any time prior to the actual discharge of the prisoner"); *Canizio* v. *State,* 8 Misc. 2d 943, 947, 169 N.Y.S.2d 185 (1957), citing *People ex rel. Presser* v. *Lawes,* supra ("[i]t was long ago held that the Governor may revoke a commutation, once granted, at any time prior to the actual discharge of the prisoner"); *Rowell* v. *Dutton,* 688 S.W.2d 474, 476-77 (Tenn. Crim. App. 1985) (governor has broad power to grant commutations and has power to revoke commutations, but this power expires at expiration of the sentence). These cases and the others cited by the parties are of little value to this court either because they are distinguishable from the case before us or because

they fail to articulate the underlying premises for their conclusions.

We conclude, however, that the purposes and goals furthered by Connecticut's scheme for commuting sentences and the need to preserve the integrity of the board's decisions support our finding that the board possesses the power to revoke decisions made on the basis of erroneous information.

Commutation of the sentence accelerates an inmate's eligibility for parole. *Dumschat II,* supra, 460. This was the express purpose of commuting the petitioner's sentence. Accordingly, the board considered his case with a view toward his eventual release from prison. The purpose of parole is "to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison. The essence of parole is release from prison, before completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey* v. *Brewer,* 408 U.S. 471, 477, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1982). That the board of pardons took these purposes into account when it commuted the petitioner's sentence is evident from the factors it considered in making its decision: (1) the nature of the crime; (2) the length of time elapsed since the commission of the crime; (3) the institutional record of the inmate; (4) the extent of the petitioner's efforts at rehabilitation; (5) the results of his efforts at rehabilitation; (6) the stability of the environment to which he would be released; and (7) the petitioner's psychiatric profile and behavior. Following the revocation hearing, the board concluded that the environment to which the petitioner would be released was substantially different from that which, in part, had induced the board to grant the commuta-

tion, and that this change was so significant as to warrant reversal of the board's decision.

The board, having considered the petitioner's application for commutation, assessed his record and conducted a hearing, was best situated to evaluate the effect of any material misrepresentation on its judgment as to the factors weighed in its decision. The fact that the board could not make a finding of fraud committed by either the petitioner or his wife does not diminish the importance of the misrepresentations. Whether Mrs. McLaughlin had lied to the petitioner or believed her statements to be true, the stability of the environment to which the petitioner would eventually be released was cast into doubt. It would be illogical for this court to hold that the board of pardons was bound by its original decision and could not, upon discovery of the misrepresentations, reconsider its decision, reevaluate the factors and modify or revoke the commutation accordingly. To require the board to abide by a wholly discretionary decision to exercise clemency based on erroneous information bearing on the petitioner's reintegration into society would run counter to the purposes of early release from prison. Furthermore, since the petitioner was still incarcerated and parole to his consecutive sentence had been suspended, the board was able to rectify this situation while the petitioner was still in custody serving his original sentence.

Therefore, the trial court was correct in concluding that the board of pardons may revoke an unconditional commutation, prior to release of the petitioner, upon presentation of evidence that material facts underlying the board's decision were misrepresented to the board.[3]

---

[3] The trial court stated that revocation should be attended by due process safeguards. Since the board of pardons afforded the petitioner these

## II

The petitioner's fifth claim of error merits little discussion. The petitioner had filed a motion for default for the respondent's failure to plead. The record does not clearly show the trial court's disposition of the motion. In any event, "[t]he denial of a motion for . . . default is committed to the discretion of the trial court and is not a ground of appeal, nor is it assignable as error." *Thomas* v. *Commerford,* 168 Conn. 64, 72, 357 A.2d 476 (1975).

## III

We also decline to consider the petitioner's second, third and fourth claims. He argues that they are reviewable under *State* v. *Benite,* 6 Conn. App. 667, 507 A.2d 478 (1986), and the *"Evans* Bypass," apparently referring to the exceptional circumstances doctrine articulated by this court in *State* v. *Evans,* supra. We disagree.

In his habeas corpus petition, the petitioner did not challenge General Statutes § 18-26 on the grounds of vagueness and overbreadth, nor does the record otherwise disclose the existence of such a claim. The trial court's memorandum of decision states that the petitioner's claim involving this statute was that since it does not specifically authorize revocation of a commutation of sentence, revocation was unlawful. Nonetheless, the petitioner insists that vagueness and overbreadth were contested throughout the proceedings. This court has not been provided with a transcript of the habeas corpus proceedings.

protections—notice, hearing, representation by counsel, the right to confront and cross-examine witnesses, a neutral and detached hearing body and a written statement articulating the reasons for revocation; see *Morrissey* v. *Brewer,* 408 U.S. 471, 488–89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972);—we need not decide whether and to what extent they are required.

Ordinarily, we will not address issues, constitutional or otherwise, that have not been preserved for appeal in the trial court. *State* v. *Hufford,* 205 Conn. 386, 406, 533 A.2d 866 (1987). In *State* v. *Evans,* supra, 70, however, we carved out two narrow exceptions to this rule: (1) where a new constitutional right, not readily foreseeable, has arisen between the time of trial and appeal; and (2) where the record adequately supports a claim that a litigant clearly has been deprived of a fundamental constitutional right and a fair trial.

The appellant is obliged to provide a record adequate to raise a claim of error. Practice Book § 4061; *State* v. *Laracuente,* 205 Conn. 515, 520, 534 A.2d 882 (1987); *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983). The record furnished by the petitioner fails even to disclose a challenge in the trial court to § 18-26 on the grounds of vagueness or overbreadth. This claim of error is not in any way cognizable under *Evans.* Accordingly, we will not review it. Furthermore, although the petitioner characterizes § 18-26 as vague and overbroad, the substance of his challenge is that the statute does not authorize the board to revoke a commutation, a matter we addressed in part I of this opinion.

Similarly, we will not review the petitioner's claim that he was denied procedural due process by the parole board. The record before us discloses that the petitioner attacked the action of the board of pardons only. He did not address his habeas corpus petition or any of his pleadings and memoranda to the revocation of parole. His only allegations of due process violations appear in connection with the action of the board of pardons. The petitioner asserts that this issue was argued before the trial court. As noted earlier, however, we have not been provided a transcript of the proceedings below and consequently have before us no record supporting this claim of error. Absent exceptional circumstances,

we will not review claimed errors unless they were distinctly raised at trial and the trial court was afforded an opportunity to rule on them. *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466–67, 378 A.2d 547 (1977); *State* v. *Evans,* supra, 69–70. The record in this case does not indicate that the trial court had an opportunity to rule on the petitioner's due process claims with respect to the parole board's action, nor does this record support application of the exceptional circumstances doctrine of *State* v. *Evans,* supra. Accordingly, we will not review this claim. *Rybinski* v. *State Employees' Retirement Commission,* supra.

We also decline to review the petitioner's claim that the board of pardons failed to comply with the Uniform Administrative Procedure Act (UAPA).

Although the petitioner invoked the UAPA in his petition and his memoranda to the trial court, the trial court's memorandum of decision makes no mention of this issue. Our rules of practice require that the trial court state its decision on each issue in the case and its conclusion as to each claim of law raised by the parties. Practice Book § 4059. Practice Book § 285A provides that a party who intends to raise a claim of law that may be the subject of an appeal must either state it distinctly to the court before the close of his argument or state it in a written trial brief. Since this issue was presented to the trial court in the petitioner's pleadings and memoranda, we conclude that it was raised within the meaning of Practice Book § 4059. See *City Savings Bank of Bridgeport* v. *Dessoff,* 3 Conn App. 644, 647, 491 A.2d 424, cert. denied, 196 Conn. 811, 495 A.2d 279 (1985). The petitioner, however, did not assign as error the trial court's failure to rule on this claim of law nor did he seek, by motion for articulation in the trial court or this court; Practice Book §§ 4051, 4061; to have the trial court address this issue. *Scherr* v. *Scherr,* 183 Conn. 366, 368–69, 439 A.2d 375 (1981);

*Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222 n.5, 435 A.2d 24 (1980); *Stabile* v. *D. & N. Transportation Co.,* 129 Conn. 11, 13, 26 A.2d 12 (1942). It remains the appellant's responsibility to furnish an adequate appellate record. Practice Book § 4061. Because the deficiency of the record regarding this claim should have been remedied by the petitioner, we will not remand the case to the trial court for rectification. *Stroiney* v. *Crescent Lake Tax District,* 205 Conn. 290, 295–96, 533 A.2d 208 (1987); *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 714, 462 A.2d 1037 (1983). Therefore, we will not review this claim.

There is no error.

In this opinion the other justices concurred.