## STATE OF CONNECTICUT *v.* DALE SCHRIVER
### (13245)

Peters, C. J., Shea, Callahan, Covello and Hull, Js.

Argued April 7—decision released May 17, 1988

*Jon C. Blue,* assistant public defender, with whom, on the brief, were *Joette Katz,* public defender, and *Michael L. Moscowitz,* deputy assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *Carolyn K. Longstreth* and *Corinne Klatt,* deputy assistant state's attorneys, for the appellee (state).

PETERS, C. J. The dispositive issue in this appeal is whether the Connecticut statute prohibiting risk of injury to a minor is, in the circumstances of this case, unconstitutionally vague. After a jury trial, the defendant, Dale Schriver, was found guilty of one count of risk of injury to a minor in violation of General Statutes § 53-21.[1] He appeals from the ensuing sentence of seven years imprisonment.[2] We find error and remand with direction to vacate the judgment of conviction.

The jury could reasonably have found the following facts: In the early morning of September 6, 1986, the victim, Stacy, then thirteen years old, was delivering newspapers on foot in a residential neighborhood of Waterbury. Shortly into her route, she noticed a "strange man" following her. Sensing possible danger, she waited on the porch of a house for about a minute before resuming her deliveries. She was then approached by the man, who asked, "Do you have an extra paper?" Stacy said, "No." The man then grabbed Stacy around the waist and said, "Don't worry, all I want to do is feel you." Stacy screamed in fright and

---

[1] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] The record reveals that the defendant was also sentenced to a three month term of imprisonment, to be served consecutive to his seven year term under General Statutes § 53-21, for his conviction for contempt of court in violation of General Statutes § 51-33. The defendant, who has been incarcerated during the pendency of this appeal, has not appealed his contempt conviction.

the man fled. A neighbor awakened by the screams went outside to find the victim shaking and hyperventilating. At trial, Stacy identified the defendant as the man who had frightened her.

The state charged the defendant with one count of risk of injury to a minor in violation of § 53-21. Specifically, the state alleged in a bill of particulars that the defendant had committed "an act likely to impair the health or morals of the victim." After the state rested its case-in-chief, the defendant moved for an acquittal on the ground of insufficient evidence. The motion was denied and the defendant excepted. The defendant then called an alibi witness who testified that he had seen the defendant some distance from the scene of the crime only a brief time before Stacy was accosted. Relying on this alibi testimony, the defendant renewed his motion for an acquittal. The court again denied it and the defendant again excepted.

On appeal, the defendant claims that his conviction violates due process because the controlling penal statute, as applied to the facts of this case, is unconstitutionally vague.[3] We agree.

I

Before reaching the merits of this appeal, we must first consider the threshold question of reviewability. The state maintains that the void for vagueness claim

---

[3] The defendant also claims that the trial court erred in denying his motion for acquittal for insufficient evidence. Although this claim of error is presented to us as the evidentiary flip side of the void for vagueness challenge, the vagueness claim must logically be reviewed first. In reviewing a claim of insufficient evidence, "our review consists of a two-step process in which we construe the evidence presented at trial in a light most favorable to sustaining the verdict . . . and then determine whether the jury could reasonably have found, ' "upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' " *State* v. *Cavallo,* 200 Conn. 664, 673, 513 A.2d 646 (1986). The gist of a vagueness claim, however, is that

is not reviewable because it was not distinctly raised at trial. We conclude that, despite this procedural default, a claim of unconstitutional vagueness falls within the parameters of *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973), and therefore warrants appellate scrutiny, because it implicates the fundamental due process right to fair warning and the record is adequate to facilitate review. *State* v. *McKenna,* 11 Conn. App. 122, 125, 525 A.2d 1374, cert. denied, 205 Conn. 806, 531 A.2d 939 (1987); see generally *State* v. *Robinson,* 204 Conn. 207, 210 n.4, 527 A.2d 694 (1987). Contrary to the state's position, our decision in *McLaughlin* v. *Bronson,* 206 Conn. 267, 537 A.2d 1004 (1988), does not foreclose *Evans* review in this case. In *McLaughlin,* a habeas petitioner challenged on vagueness grounds the statute under which his commutation had been revoked. We declined to review this claim because the petitioner had failed to provide us with transcripts of the habeas corpus proceedings and because we had already determined, in a prior section of our decision, that the statute clearly authorized the board of pardons' revocation, hence draining the vagueness claim of its purported merit. Id., 275–76. Because *McLaughlin* is thus clearly distinguishable from this case, we turn to the merits of the vagueness challenge.

## II

The constitutional injunction that is commonly referred to as the void for vagueness doctrine embod-

due process is violated whenever sufficient evidence of guilt is too readily found by a jury that is left to its own discretion without the guidance of definite enforcement standards.

As an alternative ground for reversal, the defendant argues that the trial court erred in failing to charge the jurors that they had to agree unanimously on whether the defendant violated the "morals" or the "health" clause of General Statutes § 53-21. In addition, he claims that the trial court erred in charging the jury on the statutory alternative of "health" impairment because there was no supporting evidence. We need not address either of these claims in light of our disposition of the constitutional claim of impermissible vagueness.

ies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. *Smith* v. *Goguen,* 415 U.S. 566, 572–73, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Mitchell* v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68 (1975). The fair warning principle has firm roots in federal constitutional law. *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926); *State* v. *Pickering,* 180 Conn. 54, 60, 428 A.2d 322 (1980). The United States Supreme Court recently emphasized, however, that "the more important aspect of the vagueness doctrine 'is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement.' " *Kolender* v. *Lawson,* 461 U.S. 352, 357–58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); see also *United States* v. *Reese,* 92 U.S. 214, 221, 23 L. Ed. 563 (1876). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned* v. *Rockford,* 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

In order to surmount a vagueness challenge, "a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." *McKinney* v. *Coventry,* 176 Conn. 613, 618, 410 A.2d 453 (1979). The constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties. *Winters* v. *New York,* 333 U.S. 507, 515, 68 S. Ct. 665, 92 L. Ed. 840 (1948). Under appropriate circumstances, the presence of a specific intent element in the offense may purge a potentially vague criminal statute of constitutional infirmity. *Boyce Motor Lines, Inc.* v. *United States,* 342 U.S. 337, 342, 72 S. Ct. 329, 96 L. Ed. 367 (1952); *United States* v. *Mussry,* 726 F.2d 1448, 1455 (9th Cir.

1984); *State* v. *Cavallo,* 200 Conn. 664, 668–72, 513 A.2d 646 (1986). Furthermore, a facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards. *Bishop* v. *Kelly,* 206 Conn. 608, 613, 539 A.2d 108 (1988). For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. *State* v. *Proto,* 203 Conn. 682, 696, 526 A.2d 1297 (1987).

In the circumstances of this case, the defendant alleges that the language of § 53-21 does not meet the accepted standards of the void for vagueness doctrine. The statute, written in the disjunctive, provides that "[a]ny person who . . . does any act likely to impair the health *or* morals of any [minor] child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." (Emphasis added.) The bill of particulars accused the defendant of committing a prohibited act under either the "health" or the "morals" clause of § 53-21, and the trial court charged the jury accordingly. The jury returned a general verdict of guilty as charged. Our review for vagueness must therefore address each statutory alternative individually. We nevertheless pause at the outset to take account of the general features of § 53-21.

On its face, § 53-21 fails to articulate a definite standard for determining whether the conduct of the defendant in this case is permitted or prohibited. "[A]ny act" may violate the statute so long as it is "likely to impair" a minor's health or morals. Standing alone, the phrase "any act" provides no guidance to potential violators, police officers or juries, particularly because specific intent is not an element of the offense as charged in this case. *State* v. *McClary,* 207 Conn. 233, 239–40, 541

A.2d 96 (1988); *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). Nor is the focus of the statute measurably narrowed by the phrase "likely to impair." In its ordinary meaning, this phrase would seem to authorize police officers and jurors to determine culpability subjectively, on an ad hoc basis. Rather than providing objective certainty, this phrase compounds the vagueness of the statute because it invites jurors to base criminal liability on their own moral predelictions and personal predictions of likely harm. Similar statutes have been found violative of due process in other jurisdictions. E.g., *Ex parte Jackson,* 45 Ark. 158, 164 (1885) (a statute making it a misdemeanor to "commit any act injurious to the public health or public morals . . ."); *Morrison* v. *State Board of Education,* 1 Cal. 3d 214, 220–36, 461 P.2d 375, 82 Cal. Rptr. 175 (1969) (a statute authorizing the revocation of teaching certificates for "immoral conduct"); *State* v. *Vallery,* 212 La. 1095, 1098–99, 34 So. 2d 329 (1948) (a statute that criminalized the act of enticing or permitting a minor to perform an "immoral" act). In like fashion, § 53-21 fails to manifest minimal guidelines by which innocent acts can be objectively and foreseeably distinguished from conduct that violates the statute. The "absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause." *Smith* v. *Goguen,* supra, 578. Clearly, the constitutionality of § 53-21 depends upon a determination of the extent to which prior decisions of this court have supplied sufficient guidelines to save the statute from its facial invalidity.

### A

Our first concern is the vagueness attack on the "morals" provision of § 53-21. In addressing this claim, we revisit familiar legal terrain. In *State* v. *Pickering,* supra, we upheld a conviction for likely impairment of morals against the claim of unconstitutional vagueness.

The defendant in *Pickering* had sexually molested his daughter. After reviewing the "extensive judicial gloss" on the words "likely to impair the morals" of a minor, we concluded that "[t]his court's opinions pursuant to § 53-21 make it clear that the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative of that statute." Id., 64. Using this standard, we further concluded that "[s]ection 53-21 *has been given a core* by the opinions of this court which serve as an *authoritative* judicial gloss on the provision." (Emphasis added.) Id., 65. In subsequent cases, we have invoked *Pickering* as the controlling standard for evaluating vagueness challenges to the morals provision of § 53-21. *State* v. *Perruccio,* 192 Conn. 154, 161, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984);[4] *State* v. *Smith,* 183 Conn. 17, 20–21, 438 A.2d 1165 (1981).

If *Pickering* furnishes the standard by which to test whether the defendant has violated § 53-21, his conviction for impairment of a minor's morals cannot stand, because there was no proof that he deliberately touched the private parts of a minor. The state maintains, however, that *Pickering's* judicial gloss on § 53-21 did not exhaustively encompass the permissible reach of the statute. Relying on language in *State* v. *Dennis,* supra, the state claims that the defendant had fair

---

[4] In *State* v. *Perruccio,* 192 Conn. 154, 160, 471 A.2d 632 (1984), we held that, for prosecutions under General Statutes § 53-21, the term "private parts" is synonymous with the definition of "intimate parts" in General Statutes § 53a-65 (8). We thereby recognized the desirability of reconciling the scope of § 53-21 with similar provisions of the penal code. See General Statutes § 53a-2. There is likewise a similarity between the *Pickering* test and the definition of "sexual contact" in General Statutes § 53a-65 (3). Our construction of § 53-21 is therefore consistent with the general principle that we should interpret statutes, where possible, to create a consistent body of law. See *State* v. *Kozlowski,* 199 Conn. 667, 677–78, 509 A.2d 20 (1986).

warning in this case because *Dennis* construed the statute to proscribe any sexually suggestive conduct directly perpetrated on a minor that is likely to impair his or her morals. We disagree.

*State* v. *Dennis* is legally and factually distinguishable from the present case. In *Dennis,* the defendant did "certain perverted sexual acts with his seven-year-old daughter—acts, it is not disputed, of such a base nature as to impair the morals of any minor child." Id., 246–47. At trial, the defendant claimed that his intoxication on the night of the offense negated the specific intent necessary to commit the crime. The jury was instructed that intoxication, if proven, could be a complete defense. Id., 247. The defendant was found not guilty, and the state appealed. We reversed and remanded for a new trial. On the basis of the statutory language and the legislative history, we concluded that § 53-21 proscribes "two general types of behavior . . . (1) deliberate indifference to, acquiesence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." (Citation omitted.) *State* v. *Dennis,* supra, 250. Because the defendant had been charged under the second part of the statute, specific intent was not an element of the crime for which intoxication could provide a defense. Id., 250–51.

For three reasons, our holding in *Dennis* does not provide an authoritative gloss that extends § 53-21 beyond the well-defined confines established in *State* v. *Pickering.* First, the *Dennis* gloss, which purports to penalize "acts directly perpetrated on the person of a minor and injurious to his moral or physical well-being," is nearly as vague and indefinite as the language of the statute itself. Second, we outlined the broad parameters of § 53-21 in *Dennis* not to establish definite guidelines for its enforcement but rather to

show that specific intent is not always a required element. Finally, and most important, the facts of *Dennis,* like those in *Pickering,* involved deliberate touching of private parts. We therefore conclude that, read in its factual context, *Dennis* fails to provide for § 53-21 either the fair warning or the ascertainable standards that due process requires.

The state further maintains that, in the absence of existing judicial gloss that would ascertainably criminalize the conduct of the defendant in this case, this court should rescue § 53-21 from unconstitutional vagueness by focusing on the relationship between the victim and the defendant. Whatever ambiguities might arise in other contexts, a stranger to the victim is, according to the state, on notice that his conduct, in circumstances such as proven here, violates § 53-21. We are unpersuaded. The language of § 53-21 manifestly does not make the presence or absence of a prior acquaintanceship an element of the crime of risk of injury. The state's proffered interpolation, moreover, is patently at odds with numerous cases of impairment of morals involving injurious acts perpetrated on minors by a parent or a known associate. See *State* v. *Smith,* supra, 20 (defendant stepgrandparent of victim); *State* v. *Pickering,* supra, 58 (defendant father of victim); *State* v. *Hauck,* 172 Conn. 140, 141, 374 A.2d 150 (1976) (defendant science teacher of victim); *State* v. *Gelinas,* 160 Conn. 366, 367, 279 A.2d 552 (1971) (defendant resided in home of victim's family); *State* v. *Anderson,* 152 Conn. 196, 197, 205 A.2d 488 (1964) (defendant friend of victim's father); *State* v. *Dennis,* supra, 246 (defendant father of victim).

We therefore conclude that *Pickering* establishes the governing standard for prosecutions involving likely moral impairment of a minor. We recognize that the victim in this case suffered real injury. Our decision today does not minimize her justifiable feelings of anger

and disgust toward the defendant. Under the *Pickering* test, however, we must conclude that grabbing the waist of a fully clothed minor while uttering a sexually suggestive remark is not the type of lewd conduct that § 53-21 proscribes. Accordingly, the defendant had no reasonable opportunity to know that his conduct was prohibited by the impairment of morals clause of § 53-21.

B

We next consider whether the defendant can be found to have violated that part of § 53-21 which forbids conduct that is likely to injure the health of a minor. We have reviewed only a handful of cases under this provision. In the most recent case, *State* v. *McClary,* supra, 234–39, the victim, a six month old girl, suffered brain injury from a violent shaking. In *State* v. *Eason,* 192 Conn. 37, 38, 470 A.2d 688 (1984), the victim, a two year old girl, had been severely beaten with a belt. Prior decisions have entailed similar types of blatant physical abuse. *State* v. *Martin,* 189 Conn. 1, 6, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983) (child pushed into wall and then to floor); *State* v. *Palozie,* 165 Conn. 288, 290–91, 334 A.2d 468 (1973) (child strapped, thrown against chair and head hit against floor). We agree with the defendant that these cases provide an authoritative judicial gloss that limits the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse. Measured by that standard, the defendant's conduct in this case does not fall within the confines of § 53-21.

Recognizing the difficulties of finding any significant risk of physical injury in this case, the state urges us to conclude that the defendant's conduct was culpable because it created a cognizable risk of mental injury to the victim. The defendant counters that, under the controlling gloss of *McClary, Eason, Martin* and

*Palozie,* acts likely to impair only mental health are not independently punishable by the statute. We must therefore decide, as a matter of first impression, whether § 53-21, as written or as construed, prohibits the likely impairment of mental health alone.

At the outset, we note that the defendant in this case was charged under the second part of § 53-21. To have violated the statute, then, the defendant had to have committed acts directly perpetrated on the person of a minor, whether the alleged impairment was mental or physical. Under different circumstances, the state might elect to prosecute under the first part of § 53-21, which proscribes the "deliberate indifference to, acquiesence in, or the creation of situations inimical to the minor's moral or physical welfare . . . ." *State* v. *Dennis,* supra, 250. A defendant need not physically touch a minor in order to violate that provision of § 53-21. *State* v. *Perruccio,* supra, 159–60.

Any effort to extrapolate guidelines for the prosecution of persons accused of impairing the mental health of minors is hampered by a trio of factors: The language of § 53-21 provides no tangible criteria; none of our prior cases adds a definitive gloss; and the state has not offered any workable standards. All that is absolutely known is that the irreducible minimum of any prosecution under the second part of § 53-21 is an act directly perpetrated on the person of a minor. *State* v. *Dennis,* supra, 250. While such acts are normally prosecuted as threats to *physical* health; see *State* v. *McClary,* supra; *State* v. *Eason,* supra; *State* v. *Martin,* supra; *State* v. *Palozie,* supra; it is of course true that not every act directly perpetrated on a minor will threaten his or her physical health. Some acts might very well cause mental impairment without necessarily endangering the child's physical well-being. Under an appropriately tailored penal law, the legislature would have the power to proscribe such activity.

468

Section 53-21, however, is not such a law. Without the aid of prior decisions to lend an authoritative gloss to the potentially limitless language of the statute, any effort to conform § 53-21 to the mandate of due process would necessarily entail a wholesale redrafting of the statute. We decline to undertake this activity, which is within the exclusive province of the legislature. *State* v. *O'Neill,* 200 Conn. 268, 288, 511 A.2d 321 (1986); *State* v. *Johns,* 184 Conn. 369, 376–77, 439 A.2d 1049 (1981); see also *Harris* v. *State,* 457 P.2d 638, 647 (Alaska 1969) (refusing to resurrect by judicial fiat a standardless statute prohibiting "crime[s] against nature"); *ABC Interstate Theatres, Inc.* v. *State,* 325 So. 2d 123, 126 (Miss. 1976) (declining to exercise the "legislative function" of revising an unconstitutionally vague obscenity statute). We therefore conclude that the combined gloss of *McClary, Eason, Martin* and *Palozie* defines the limits of § 53-21 for the purposes of acts likely to impair the health of a minor.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to vacate the defendant's conviction under § 53-21.

In this opinion the other justices concurred.