WILFRED MORIN ET AL. *v.* JOHN DIMARCO ET AL.
(6847)

DUPONT, C. J., STOUGHTON and NORCOTT, Js.

Argued March 9—decision released May 23, 1989

*Thomas E. Minogue, Jr.,* with whom, on the brief, was *Kimberly A. Grillo,* for the appellants (defendants).

*William F. Gallagher,* with whom, on the brief, were *Michael J. Hayes* and *Kerrie C. Dunne,* for the appellees (plaintiffs).

NORCOTT, J. This appeal involves a summary process action brought by the plaintiff landlords, based on the defendants' nonpayment of rent in violation of the terms of a lease. At trial, the defendants contended that the plaintiffs had breached the lease by wrongfully permitting a third party to occupy the premises to the exclusion of the defendants. The defendants appeal from the judgment of the trial court in favor of the plaintiffs. On appeal, the dispositive question is whether the trial court erred in not holding that the plaintiffs were estopped from declaring a forfeiture of the lease. We find no error.

The following facts are relevant to this appeal. The plaintiffs, Wilfred and Ann Morin, own commercial property suitable for conducting a gas station and motor vehicle repair business, located at 675 Bridgeport Avenue in Milford. On January 31, 1986, the plaintiffs entered into a written lease with Meadows End, Inc. The lease was for a period of five years, commencing on February 1, 1986, and providing for a monthly rent of $850 with an option to renew and a right of first refusal to purchase the premises. The lease further provided that the tenant would be in default if payment of the rent was not made by the tenth of each month.

On November 13, 1986, Meadows End, Inc., assigned its interest in the premises to Muriel Kaster. Later in November, Kaster in turn assigned her interest to the defendants, John and RoseAnn DiMarco, for $30,000.

Wesley Wheaton, president of Meadows End, Inc., made monthly payments of $850 to the plaintiffs

through November, 1986. On December 10, 1986, the plaintiffs received a check for the December rent from the defendants. The plaintiffs, unaware of who the defendants were, returned the check to Wheaton. On December 18, 1986, Wheaton notified the plaintiffs by letter that he had assigned the lease to Kaster. On January 10, 1987, the defendants delivered another check to the plaintiffs who again refused to accept the payment.

At trial, the plaintiff Ann Morin testified that she began negotiations in December with John Sorrentino, a long time friend of hers, after she believed that Wheaton had terminated his lease agreement. The plaintiffs gave Sorrentino permission to occupy the premises, and he began to move his automotive service equipment onto the premises in January, 1987.

After receiving the assignment of the lease from Kaster in November, 1986, the defendants changed the locks to the premises. The defendant John DiMarco testified that, at a later date, he returned to the premises to find the locks broken and Sorrentino occupying the site.

In March, 1987, the defendants brought an action against Sorrentino and, on June 4, 1987, the trial court, *Kulawiz, J.,* determined that the defendants were the owners of a possessory leasehold interest and permanently enjoined Sorrentino from occupying the premises. Thereafter, on advice of counsel, Sorrentino began to move his equipment off the premises.

The defendant John DiMarco testified that Sorrentino was still on the property after the injunction was issued. Both Sorrentino and Ann Morin testified that the plaintiffs had, in fact, requested that Sorrentino keep the keys to the property and "show a presence" around the premises to discourage vandalism. On July 2, 1987, the defendants filed a motion for contempt

against Sorrentino for violating the court's order enjoining him from entering onto the property. On July 20, 1987, the trial court, *Kulawiz, J.,* held a hearing to show cause on the defendants' contempt motion at which Sorrentino testified that he had vacated the property on June 19 or 20. The court entered no rulings or orders on the motion. On September 24, 1987, the defendants tendered to the plaintiffs a check in the amount of $1700, with a letter stating that the check was in payment of the August and September rent. The plaintiffs returned the check. The plaintiffs never received a check for the July rent. On October 20, 1987, the plaintiffs began eviction proceedings against the defendants based on the failure to pay the July rent. The trial court, *Hon. Thomas J. O'Sullivan,* state trial referee, rendered judgment for the plaintiffs on March 2, 1988.

The defendants contend that, under the circumstances of this case, the trial court should have held that the plaintiffs were estopped from claiming possession of the premises. In Connecticut, it is well settled that equitable defenses are available in a summary process action. *Mobilia, Inc.* v. *Santos,* 4 Conn. App. 128, 492 A.2d 544 (1985); *Zitomer* v. *Palmer,* 38 Conn. Sup. 341, 344, 446 A.2d 1084 (1982); *Danpar Associates* v. *Falkha,* 37 Conn. Sup. 820, 823, 438 A.2d 1209 (1981). The essential elements of estoppel are that " 'the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . .' " (Citations omitted.) *Brown* v. *Employer's Reinsurance Corporation,* 206 Conn. 668, 677, 539 A.2d 38 (1988), quoting *West Hartford* v. *Rechel,* 190 Conn. 114, 121, 459 A.2d 515 (1983).

In this case, the trial court found (1) that Sorrentino had vacated the premises on June 20, 1987, (2) that the defendants were in peaceful possession of the premises as of that date, (3) that the defendants thereby had the obligation under the lease to pay the July rent, and (4) that no tender of the rent for July was ever made to the plaintiffs. The trial court's findings of fact will not be disturbed on appeal unless the findings are clearly erroneous and are not supported by the whole record. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 473, 542 A.2d 692 (1988); *Schultz* v. *Barker,* 15 Conn. App. 696, 700, 546 A.2d 324 (1988). Our review of this record does not lead us to conclude that the court's findings were erroneous. Furthermore, although the trial court made no specific findings in its memorandum of decision on the issue of estoppel, the defendants did not request an articulation regarding that omission. Accordingly, none of the facts upon which the defendants rely for the estoppel defense was found. "It remains the appellant's responsibility to furnish an adequate appellate record. Practice Book § 4061." *McLaughlin* v. *Bronson,* 206 Conn. 267, 278, 537 A.2d 1004 (1988). Because the appellant should have remedied any deficiency in the record, we will not review this claim. See id.

We do note, however, that a review of the defendants' own actions indicates that their claim of estoppel is without merit. "The party asserting estoppel 'must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.' *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565 [1961]." *Eighth Utilities District* v. *Manchester,* 176 Conn. 43, 53, 404 A.2d 898 (1978). Measured against this standard, the defendants' claim must fail. As of June 4, 1987, the defendants had obtained

a permanent injunction against Sorrentino's presence on the premises. Yet, it was not until July 2, 1987, that they sought a court order for contempt against Sorrentino. In the interim, it does not appear that the defendants took any action to enforce the injunction when they allegedly saw Sorrentino still on the property. We are unpersuaded by the defendants' argument that, until the July 20, 1987 order to show cause hearing, they were unaware that Sorrentino had vacated the premises and that it was the plaintiffs' responsibility to inform them that Sorrentino had vacated the property. Even if their contention were true, the defendants have exhibited a lack of diligence in ascertaining the true situation and in acting to protect their $30,000 investment and their rights as tenants.

The defendants also contend that the trial court erred in concluding that they had a duty to pay a portion of the July rent. This claim is predicated on the trial court's memorandum of decision dated February 26, 1988, in which the court, without finding whether Sorrentino vacated the premises on June 20 or by mid-July of 1987, determined that the defendants, who had not tendered any rent for July, were responsible for rent either for the entire month or a portion thereof. The defendants, however, fail to note the court's articulation, dated May 26, 1988, in which the court specifically found that Sorrentino had vacated the premises on June 20, and that the defendants were in peaceful possession of the premises thereafter, and were therefore responsible for paying the full rent for the month of July. As a result of that finding, the defendants' second claim of error is moot.

There is no error.

In this opinion the other judges concurred.