**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SCOTT ALLEN HAIN,

        Petitioner,

v.

MIKE MULLIN, Warden, Oklahoma
State Penitentiary at McAlester,

        Respondent.

---

UNITED STATES OF AMERICA

        Appellee,

v.

STEVEN M. PRESSON and
ROBERT W. JACKSON,

        Movants - Appellants.

---

FEDERAL PUBLIC DEFENDER,
WESTERN DISTRICT OF
OKLAHOMA,

        Amicus Curiae.

No. 05-5039

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 98-CV-331-TCK)**

Submitted on the briefs:[*]

Steven M. Presson and Robert W. Jackson, Jackson & Presson, P.C., Norman, Oklahoma, for Movants-Appellants.

David E. O'Meilia, United States Attorney, and Kevin Danielson, Assistant United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, for Appellee.

Susan M. Otto, Federal Public Defender for the Western District of Oklahoma, and Scott W. Braden, Assistant Federal Public Defender, Death Penalty Federal Habeas Corpus Division, Oklahoma City, Oklahoma, filed an amicus curiae brief for the Federal Public Defender for the Western District of Oklahoma in Support of Petitioner-Appellant.

Before **TACHA**, Chief Circuit Judge, **EBEL**, **KELLY**, **HENRY**, **BRISCOE**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

**LUCERO**, Circuit Judge.

We granted initial en banc hearing of this case to consider the reach of 21 U.S.C. § 848(q)(4)(B), which provides federally-funded counsel for indigent state death row prisoners seeking federal habeas relief. Specifically, § 848(q)(4)(B) authorizes "the appointment of one or more attorneys and the furnishing of such other services in accordance with" 21 U.S.C. § 848(q)(8). Section (q)(8) of the statute in turn commands that "each attorney so appointed shall represent the

---

[*] The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2)(C) and 10th Cir. R. 34.1(G).

defendant throughout every subsequent stage of available judicial proceedings, including . . . proceedings for executive or other clemency as may be available to the defendant."  Today, we accord these words their plain meaning and hold that counsel appointed under § 848(q)(4)(B) to represent state death row inmates in 28 U.S.C. § 2254 proceedings are authorized by the statute to represent these clients in state clemency proceedings and are entitled to compensation for clemency representation.  In so holding, we **REVERSE** the judgment of the court below.

**I**

Scott Allen Hain filed a § 2254 petition seeking relief from a sentence of death imposed by an Oklahoma state court.  Hain appealed the denial of habeas relief, which this court affirmed.  Hain v. Gibson, 287 F.3d 1224 (10th Cir. 2002).  Once the Supreme Court denied certiorari, Hain's attorneys Robert W. Jackson and Steven M. Presson filed in the district court an "Ex-Parte Request for the Court to Confirm Continuing Representation Under 21 U.S.C. § 848(q)(8) and to Set Immediate Date for Budget Conference."  The district court denied the attorneys' request, finding that the statute under which they were appointed – 21 U.S.C. § 848(q)(4)(B) – does not authorize federal funding for attorneys in state clemency proceedings.  Notwithstanding the uncertainty of their funding, counsel commendably represented Hain in state clemency proceedings.  They were unsuccessful and Hain was executed.

- 3 -

While clemency representation was ongoing, this court considered the appeal from the district court's order denying counsel's motion. A divided panel of this court affirmed the district court's order. Hain v. Mullin, 324 F.3d 1146 (10th Cir. 2003); id. at 1151 (Lucero, J., dissenting). We then decided to hear this matter en banc, but Hain was executed before we disposed of the case. Accordingly, we vacated the panel opinion and vacated the order granting rehearing en banc, determining that the issue presented was moot. Hain v. Mullin, 327 F.3d 1177 (10th Cir. 2003) (en banc).

Jackson and Presson subsequently submitted ex parte claim vouchers to the district court seeking payment for their representation of Hain during the clemency proceedings. The court denied payment, ruling that § 848(q)(8) does not authorize federal funding for state clemency representation. Counsel appealed this ruling and we have again decided to consider this matter en banc.

**II**

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says . . . ." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Thus, as always, we begin with the statutory language and must "give effect, if possible, to every clause and word." Duncan v. Walker, 533 U.S. 167, 174 (2001). We will not inquire into Congress's intent if the statutory language is clear. Edwards v. Valdez, 789 F.2d 1477, 1481 (10th Cir. 1986). Rather, "[w]hen confronted with

- 4 -

clear and unambiguous statutory language, our duty is simply to enforce the statute that Congress has drafted." United States v. Ortiz, 427 F.3d 1278, 1282 (10th Cir. 2005).

Section 848(q) employs clear and precise language, admitting of no ambiguity and leaving no room for interpretation. Congress has directed that "[i]n any post conviction proceeding under section 2254 . . . seeking to vacate or set aside a death sentence . . . any defendant who is or becomes financially unable to obtain adequate representation . . . shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with [paragraph 8]." 21 U.S.C. § 848(q)(4)(B).[1] Unambiguously, this provision states that death row inmates seeking relief under § 2254 – a path exclusive to state prisoners – are entitled to the appointment of attorneys and the furnishing of services described in paragraph 8. See 28 U.S.C. § 2254 (statute applies to "person[s] in custody pursuant to the judgment of a State court"). In turn, paragraph 8 provides: "each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings . . . and shall

---

[1] The full text of 21 U.S.C. § 848(q)(4)(B) reads:

In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

also represent the defendant in such . . . proceedings for executive or other clemency as may be available to the defendant." § 848(q)(8).[2]

One need look no further than the statute's plain language to see that Congress has directed that counsel appointed to represent state death row inmates during § 2254 proceedings must "represent the defendant throughout every subsequent stage of available judicial proceedings" including "proceedings for executive or other clemency as may be available to the defendant." Id.[3] When Congress required attorneys appointed to represent § 2254 petitioners to pursue "proceedings for executive or other clemency," it must have meant state clemency proceedings given that federal officials have no authority to commute a state court sentence. See U.S. Const., art. II, § 2 (President has "Power to grant Reprieves and Pardons for Offenses against the United States"). Because the

---

[2] The full text of 21 U.S.C. § 848(q)(8) reads:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

[3] We do not imply that the statute applies exclusively to state prisoners proceeding under § 2254. Rather, the statute affords equal access to clemency representation for § 2254 and § 2255 petitioners.

President does not have the power acting under the United States Constitution to pardon defendants convicted in state courts, it would be nonsensical to suggest that § 848(q)(8) provides for compensation for counsel to state defendants only in federal clemency proceedings.  See Young v. United States, 97 U.S. 39, 66 (1878) ("if there is no offence against the laws of the United States, there can be no pardon by the President.").  Acknowledging a circuit split on the issue, we nonetheless see no other logical way to read the statute.  As expressed by the Eighth Circuit:  "The plain language of § 848(q) evidences a congressional intent to insure that indigent state petitioners receive 'reasonably necessary' . . . clemency services from appointed, compensated counsel."  Hill v. Lockhart, 992 F.2d 801, 803 (8th Cir. 1993); see also Lowery v. Anderson, 138 F. Supp. 2d 1123, 1125 (S.D. Ind. 2001) ("This court finds the plain language of § 848(q)(8) to be controlling here, consistent with the straightforward and persuasive reasoning of the Eighth Circuit in Hill."); Strickler v. Greene, 57 F. Supp. 2d 313, 316 (E.D. Va. 1999) (same).

Ignoring the statute's plain meaning, the government urges this court to follow the Eleventh Circuit in concluding that, because § 848(q) is part of 21 U.S.C. § 848, which focuses primarily on punishments for violations of federal drug laws, "the language contained in the sections preceding and following [§ 848(q)(4)(B)] relates more directly to federal criminal trial and appeals, than to habeas cases seeking relief from state court sentences."  King v. Moore, 312 F.3d

1365, 1367 (11th Cir. 2002).[4]  On that basis, the Eleventh Circuit held that "the word 'federal' is an implied modifier for 'proceedings,'" as it is used in § 848(q)(8), such that "'proceedings' = the federal proceedings that are available to the defendant."  Id. (equals sign in the original).[5]  The Eleventh Circuit does not deny that state death row inmates proceeding under § 2254 are entitled to the furnishing of services in accordance with paragraph 8.  Rather, the court amends

---

[4] In a similar vein, the dissent asserts that the proceedings described in § 848(q)(8) are exclusively federal proceedings.  Dissent at 4-5.  To reach that conclusion, the dissent relies heavily on the fact that § 848(q)(4)(B) was added to the bill after § 848(q)(8) was drafted.  Initially, § 848(q)(8) detailed the extent of representation that appointed counsel was to provide to federal capital defendants. Inexplicably, the dissent concludes that when § 848(q)(4)(B) was added to the bill to entitle indigent § 2254 capital petitioners to the furnishing of services listed in § 848(q)(8), the clemency proceedings listed in § 848(q)(8) necessarily retained their character as exclusively federal proceedings.  Reading the statute in such a manner would reduce to surplusage the phrase "proceedings for executive and other clemency" as it applies to § 2254 petitioners.  The dissent offers no reason why the scope of clemency representation remained unaltered despite its extension to state prisoners, but does argue that it is "unlikely" that Congress intended to encompass state clemency proceedings because § 848(q)(4)(B) "was added to the bill very late in session and seemingly without floor debate." Dissent at 10 (quoting King, 312 F.3d at 1368).  It seems that the dissent is arguing that, in its haste, Congress did not realize that it was broadening the scope of clemency representation to include representation at state clemency proceedings.  We refuse to give Congress such little credit.  Rather, we recognize that Congress understands the effect of the language that it employs and "that our elected representatives . . . know the law."  Albernaz v. United States, 450 U.S. 333, 341 (1981) (quotations and citation omitted).

[5] The Supreme Court recently cautioned lower courts not to assume that Congress intended to impose the word "federal" as a modifier for general statutory terms in the habeas corpus context, given "the fact that the words 'State' and 'Federal' are likely to be of no small import when Congress drafts a statute that governs federal collateral review of state court judgments."  Duncan, 533 U.S. at 173-74.

paragraph 8 to encompass only federal proceedings. Under this amended version of the statute, although a state prisoner is entitled to federally-funded counsel at proceedings for executive or other clemency, such state prisoners will receive representation only at federal clemency proceedings. The analytical complication with this approach is that, as noted, federal clemency proceedings are unavailable to prisoners seeking relief from a state sentence. Moreover, such a reading ignores the plain meaning of the statute, violates the canon of statutory interpretation requiring us to give effect to every word of a statute, and reads the statute out of context.[6]

---

[6] We do not address whether § 848(q)(8) authorizes federally-funded representation at state trials and appeals resulting from successful § 2254 petitions. The Sixth Circuit expressed concern that affording the statute its plain meaning would entitle successful § 2254 petitioners "to have Federal Defender represent him in any resulting new state trial, state appeal, and state habeas corpus proceedings if his current sentence is vacated." House v. Bell, 332 F.3d 997, 999 (6th Cir. 2003); see also Sterling v. Scott, 57 F.3d 451, 457 (5th Cir. 1995). We decide today only the scope of § 848(q)(8) as it relates to state clemency proceedings, and express no view on the proper construction of the statute as it relates to prevailing § 2254 petitioners. We doubt, however, that the parade of horribles presented by the Sixth Circuit has a factual basis. Section 848(q)(4)(B) states that counsel will be appointed when a defendant "is or becomes financially unable to obtain adequate representation." If the state becomes obliged to provide counsel, "adequate representation" is available, and § 848(q)(4)(B) is no longer implicated. Under Gideon v. Wainwright, 372 U.S. 335 (1963), states are obliged to provide counsel to indigent defendants at criminal trials. Thus, a defendant granted a new trial as a result of a successful § 2254 petition would almost certainly receive constitutionally guaranteed counsel, and thus would no longer be "unable to obtain adequate representation" under the statute. By contrast, when a state refuses to pay for counsel at clemency proceedings, the defendant remains unable to obtain adequate representation, and such representation is funded under the statute. Moreover, the result of a request for clemency is binary in nature. Clemency is granted, or it is

Adopting the government's interpretation would fail to "give effect, if possible, to every clause and word" of the statute. Duncan, 533 U.S. at 174. Section 848(q)(8) provides that federally-appointed counsel shall "represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." (Emphasis added). The statute's reference to "other clemency" is meaningless unless it refers to state clemency proceedings, as executive clemency is the only form of clemency in the federal system. See U.S. Const., art. II, § 2. By contrast, some states have vested clemency power exclusively in the legislature, have provided for shared legislative-executive clemency authority, or have permitted the executive and

---

not. If clemency is denied, that ends the matter. If clemency is granted, the result of such grant does not generally lead to a new trial and thus the basis advanced by the Sixth Circuit is not relevant in a clemency context.

In any event, whether § 848(q)(8) authorizes federally-funded representation at new state trials under any circumstances remains an open question of statutory interpretation. This statute authorizes representation at two distinct stages of proceedings. First, it directs that "each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures. . . ." § 848(q)(8). Second, it provides that appointed counsel "shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." Id. These are separate clauses. Whether a new state trial resulting from a state's decision to re-prosecute a successful § 2254 petitioner is a "subsequent stage of available judicial proceedings" is unclear, but that issue is neither before us nor implicated by our decision today.

- 10 -

judiciary to share clemency power.[7]  See, e.g., McLaughlin v. Bronson, 537 A.2d

1004, 1006 (Conn. 1988) ("In Connecticut, the pardoning power is vested in the

legislature"); Fla. Const. Art. IV, § 8 ("In cases of treason the governor may grant

reprieves until adjournment of the regular session of the legislature convening

next after the conviction, at which session the legislature may grant a pardon or

further reprieve"); Nev. Const. art. 5, § 14 ("The governor, justices of the

supreme court, and attorney general [may] remit fines and forfeitures, commute

punishments, except as provided in subsection 2, and grant pardons, after

convictions").[8]

---

[7] Because Presidents "have, from time to time, appointed boards to assist them in exercising their clemency authority," dissent at 8, and because the dissent considers it "an open question whether Congress itself has clemency authority independent from the President," dissent at 9, the dissent would interpret the reference in § 848(q)(8) to "other clemency" to mean forms of clemency that might possibly arise in the federal system at some point in the future.  Yet, should the President appoint a board to assist in the exercise of clemency, any grant of clemency would remain a form of executive clemency.  Moreover, it is well-established that federal clemency authority "flows from the Constitution alone, not from any legislative enactments, and that it cannot be modified, abridged, or diminished by the Congress."  Schick v. Reed, 419 U.S. 256, 266 (1974).  As stated above, article II, section 2 of the Constitution vests the pardoning power in the President.  The dissent points to no Constitutional provision, no statute and no case that authorizes Congress to grant clemency to capital defendants.  We do not think that in drafting § 848(q)(8), Congress somehow meant to refer to a non-existent form of federal clemency for capital defendants.

[8] Many other states divide clemency authority, at least for some crimes, between the executive branch and a coordinate branch.  See Cal. Pen. Code § 4852; Idaho Const. art. IV, § 7; Ind. Const. art. V, § 17; Ky. Const. § 77; Neb. Const. art. IV, § 13; N.Y. Const. art. IV, § 4; Ohio Const. art III, § 11; Or. Const. art. V, § 14; Tenn. Code Ann. § 40-27-106; Utah Const. art VII, § 12; Wyo. Const. art. IV, § 5.

The government argues that § 848(q)(8) must be considered "in its context as part of the Anti-Drug Abuse Act of 1988." Appellee Br. at 10. This implies that because § 848(q) is lodged in a statute generally addressed at federal drug laws, § 848(q)(8) "does not authorize federally appointed and federally funded attorneys to represent state prisoners in state clemency proceedings." Appellee Br. at 11. There is a problem with this argument: viewing § 848(q)(8) in its appropriate context, there is no indication that the statute is limited to federal proceedings. The most informative context is that provided by § 848(q)(4)(B), which references § 848(q)(8) and establishes that state capital defendants "proceeding under section 2254" are "entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with [paragraph 8]." The provision at issue applies "to habeas cases seeking relief from state court sentences," and does not, as the Eleventh Circuit concludes, relate "more directly to federal criminal trial and appeals." Moore, 312 F.3d at 1367. It cannot be disputed that § 848(q) applies to all capital cases, and not just drug-related cases, even though § 848 is generally addressed at violations of the federal drug laws. See 21 U.S.C. § 848(q)(4)(A) (applies to "every criminal action in which a defendant is charged with a crime which may be punishable by death [and] is or becomes financially unable to obtain adequate representation") (emphasis added); 21 U.S.C. § 848(q)(4)(B) (applies to "any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to

- 12 -

vacate or set aside a death sentence, [where the defendant] becomes financially unable to obtain adequate representation") (emphasis added). That § 848(q) is not limited to drug offenses is recognized by the dissent in its acknowledgment that representation at the proceedings listed in § 848(q)(8) are available to all indigent federal capital defendants and not just those charged under § 848. Dissent at 5. The government's suggested approach would distort the plain meaning of § 848(q).

In a final attempt to avoid the plain meaning of the statute, the government argues that its unqualified application would lead to absurd results. In particular, the government argues that it is absurd to think that Congress intended to fund representation at state clemency proceedings. In order "to justify a departure from the letter of the law" on the ground of absurdity, "the absurdity must be so gross as to shock the general moral or common sense." Crooks v. Harrelson, 282 U.S. 55, 60 (1930); see also Payne v. Fed. Land Bank of Columbia, 916 F.2d 179, 182 (4th Cir. 1990) (noting that the absurdity exception applies only when "the absurdity and injustice of applying the provision [literally] to the case would be so monstrous that all mankind would without hesitation, unite in rejecting the application") (quoting Sturges v. Crowinshield, 17 U.S. (4 Wheat.) 122, 202-03 (1819)). The federal government providing representation to indigent death row inmates at state clemency proceedings is not an absurdity "so gross as to shock the general moral or common sense." Id. It is entirely plausible that Congress

- 13 -

did not want condemned men and women to be abandoned by their counsel at the last moment and left to navigate the sometimes labyrinthine clemency process from their jail cells, relying on limited resources and little education in a final attempt at convincing the government to spare their lives. The government may not agree with Congress's decision to authorize such funding, but as Justice Scalia has noted, "Congress can enact foolish statutes as well as wise ones, and it is not for the courts to decide which is which and rewrite the former." Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 20 (1997). We would add only that when Congress has spoken, it is not for us to stand in the wings like a classic Greek chorus and explain that Congress did not mean what it said.

### III

The judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

05-5039, Hain v. Mullin
**BRISCOE, J.,** joined by **KELLY, J.** and **MURPHY, J.** dissenting.

I respectfully dissent.  In my view, 21 U.S.C. § 848(q)(8) does not entitle state prisoners, such as Hain, to federally appointed and funded counsel to represent them in state clemency proceedings.  Thus, I conclude that appellants Presson and Jackson are not entitled to reimbursement of their fees and expenses in connection with representing Hain in clemency proceedings before the Oklahoma Pardon and Parole Board.

I.

Appellants Presson and Jackson were appointed by the district court pursuant to § 848(q)(4)(B) to represent Hain in his federal habeas proceedings.  After those proceedings were completed, Hain's only remaining avenue of relief from his death sentence was to seek clemency from the Oklahoma Pardon and Parole Board and the Governor of the State of Oklahoma.  Because the State of Oklahoma does not provide for appointment of counsel in such proceedings, Presson and Jackson filed a motion with the district court "'seeking confirmation of [their] continuing obligation to represent'" Hain in his state clemency proceedings, and "'to receive compensation for [their] time and expenses'" in doing so.  Hain v. Mullin, 324 F.3d 1146, 1148 (10th Cir. 2003) (quoting petitioner Hain's brief), vacated by Hain v. Mullin, 327 F.3d 1177 (10th Cir. 2003).  The district court denied the motion, concluding that § 848(q)(8) does not encompass representation of a state prisoner in state clemency proceedings.  Id.

Notwithstanding the district court's order, Presson and Jackson proceeded to represent Hain in his state clemency proceedings. Hain was ultimately denied clemency and executed. Thereafter, Presson and Jackson submitted two Criminal Justice Act (CJA) payment vouchers to the district court seeking reimbursement of their fees and expenses incurred in representing Hain in his state clemency proceedings. The district court refused to approve the vouchers for payment. In the district court's view, "Congress never intended for the federal government to pay attorneys for a state court defendant to pursue state remedies sought in state proceedings." Aplt. Br., Attachment 1, at 4. Rather, the district court concluded, "Congress intended § 848(q)(8) to be read in light of § 848(q)(4)(B), which provides a right to counsel only in connection with federal proceedings brought pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 2255." Id. at 5.

II.

Presson and Jackson have now appealed the district court's order. They contend § 848(q)(8) encompasses state executive clemency proceedings pursued by a state capital defendant following the denial of federal habeas relief. Thus, they assert, they were obligated to represent Hain during his state clemency proceedings, and in turn are now entitled to reimbursement of the fees and expenses incurred in connection with that representation. The United States, whom we invited to participate in this appeal, disputes this interpretation of §

- 2 -

848(q)(8).  The United States argues § 848(q)(8) was never intended by Congress to encompass state judicial or clemency proceedings.

Because the district court's interpretation of a federal statute is at issue, we apply a de novo standard of review.  Shawnee Tribe v. United States, 423 F.3d 1204, 1212 (10th Cir. 2005).  "As in all cases of statutory construction, our task is to interpret the words of the [statute] in light of the purposes Congress sought to serve."  Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 118 (1983).  "[O]ur starting point must be the language employed by Congress, . . . and we assume that the legislative purpose is expressed by the ordinary meaning of the words used."  American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982) (internal quotation marks and citations omitted).

As noted, Presson and Jackson were appointed to represent Hain pursuant to § 848(q)(4)(B), which provides, in pertinent part:

> In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation . . . . shall be entitled to the appointment of one or more attorneys . . . in accordance with paragraphs (5), (6), (7), (8) [of subsection (q)] . . . .

21 U.S.C. § 848(q)(4)(B).  In turn, the extent to which they were obligated to represent Hain was outlined in § 848(q)(8):

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial

proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

21 U.S.C. § 848(q)(8). The question posed in this appeal is whether the phrase "proceedings for executive or other clemency as may be available to the defendant," as used in § 848(q)(8), was intended by Congress to encompass state clemency proceedings. In other words, did Congress, through use of this phrase, intend to provide federally-funded counsel to represent state capital defendants in state clemency proceedings?

In answering this question, it is necessary to examine the phrase at issue in light of the statute as a whole. See Food and Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (internal quotation marks omitted). The reason for doing so is clear: "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme–because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." Koons

Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 125 S.Ct. 460, 467 (2004) (internal quotation marks and citation omitted).

Section 848 of Title 21 addresses generally the federal crime of engaging in a continuing criminal enterprise (CCE). Because the statute provides for the imposition of the death penalty in certain CCE cases, see 21 U.S.C. § 848(e), it contains a number of subsections outlining special procedures to be utilized in such cases, as well as in other federal capital cases. Included among those is a subsection providing for the appointment of counsel to any "defendant who is or becomes financially unable to obtain adequate representation . . . at any time either . . . before judgment . . . or . . . after the entry of a judgment imposing a sentence of death but before the execution of that judgment . . . ." 21 U.S.C. § 848(q)(4)(A)(I), (ii). Once counsel is appointed in such a case, the extent of their representation is outlined in § 848(q)(8). Not surprisingly, given § 848's general focus on CCE and other federal capital cases, § 848(q)(8) expressly provides for federally-funded counsel to represent federal capital defendants through all of their trial proceedings (i.e., from the "pretrial proceedings" through "sentencing" and "motions for new trial") and, if they are convicted, through the appellate process, the post-conviction process and, if necessary, any available clemency

proceedings.[1]  In sum, the intent of Congress is evident: all of the proceedings

listed in § 848(q)(8) are federal proceedings.[2]

In my view, the inclusion of § 848(q)(4)(B) in the overall statutory scheme

does nothing to alter the conclusion that Congress intended for § 848(q)(8) to

encompass only federal proceedings.  After all, the post-conviction proceedings

listed in § 848(q)(4)(B), i.e., § 2254 and § 2255 proceedings, are necessarily

federal in nature.  Further, by the time state capital prisoners are appointed

counsel under § 848(q)(4), they have already completed their state trial and

appellate proceedings and, presumably, exhausted the available state post-

conviction remedies.  Thus, absent the granting of federal habeas relief resulting

---

[1] Indeed, the legislative history, which is discussed below, suggests that § 848(q)(8) was drafted exclusively with federal capital defendants in mind, and was not modified following the last-minute addition of § 848(q)(4).

[2] The majority suggests, citing Duncan v. Walker, 533 U.S. 167 (2001), that it is inappropriate to assume that Congress intended for § 848(q)(8) to encompass only federal proceedings.  Maj. Op. at 8, n.4.  The majority, however, reads too much into Duncan.  At issue in Duncan was "whether a federal habeas corpus petition is an 'application for State post-conviction or other collateral review' within the meaning of" 28 U.S.C. § 2244(d)(2).  533 U.S. at 169.  In concluding "that an application for federal habeas corpus review is not "an application for State post-conviction or other collateral review,'" id. at 181, the Court noted "[i]t would be anomalous, to say the least, for Congress to usher in federal review under the general rubric of 'other collateral review' in a statutory provision that refers expressly to 'State' review, while denominating expressly both 'State' and 'Federal' proceedings in other parts of the same statute."  Id. at 173.  Here, the statute at issue, § 848, in contrast to § 2244, contains no express references to "State," but clearly and expressly refers to federal court proceedings, specifically federal capital trials and federal habeas proceedings (including both § 2254 and § 2255 proceedings).  Thus, the express language of § 848(q)(8) allows for no assumption other than that Congress intended to refer only to federal proceedings.

in a new state trial, the majority of the proceedings expressly listed in § 848(q)(8) have no applicability at all to state capital prisoners.  Moreover, it cannot seriously be suggested that Congress intended, in the event a state capital prisoner obtains federal habeas relief and is granted a new trial, to provide federally-funded counsel to represent that prisoner in the ensuing state trial, appellate, and post-conviction proceedings, even though those proceedings are expressly listed in § 848(q)(8).[3]  Indeed, if that were true, we would have the odd, and potentially unconstitutional, result of a federal court (i.e., the federal district court that first

---

[3] I fail to see how the majority can reasonably interpret the phrase "executive or other clemency" to include state clemency proceedings without also interpreting the remainder of the proceedings listed in § 848(q)(8) to include state proceedings.  Thus, in my view, the majority's interpretation of § 848(q)(8) opens the door for federal funding of counsel to represent state defendants in retrials and subsequent proceedings.  Curiously, the majority attempts to downplay the impact of its ruling by suggesting that, if a state habeas petitioner is granted a new trial, he or she "would almost certainly receive constitutionally guaranteed counsel [from the state], and thus would no longer be 'unable to obtain adequate representation' under the statute."  Maj. Op. at 9, n.5.  That ignores, however, the fact that § 848(q)(4)(B) hinges on a state habeas petitioner's financial ability to obtain adequate representation, and not upon the availability of adequate representation through other means.  Because the vast majority of state habeas petitioners are indigent, their financial inability to obtain adequate representation means that § 848(q)(4)(B) would continue to apply in the event that they obtain federal habeas relief and are granted a new state trial.  Further, § 848(q)(8) would mandate that federally-appointed counsel continue to represent state habeas petitioners in state court until they were "replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant . . . ."  Therefore, it is entirely foreseeable that a successful state habeas petitioner would want to continue to be represented in state court by his or her federally-appointed counsel, and thus would not file any such motion for substitution of counsel.

appointed counsel pursuant to § 848(q)(4)(B)) effectively overseeing state proceedings.

Nor am I convinced that § 848(q)(8)'s reference to "executive or other clemency as may be available to the defendant" does anything to undermine the notion that Congress intended § 848(q)(8) to include only federal proceedings. To be sure, the federal government does not currently have in place, as do some states, a board with clemency authority independent from the executive. See generally Margaret Colgate Love, Relief from Collateral Consequences of a Criminal Conviction, Table #1 - Models for Admin. of the Pardon Power in the U. S. (July 2005), http://www.sentencingproject.org/rights_restoration/table1.html (noting that six states currently have in place an independent board that exercises pardon power). Seizing upon that fact, the majority concludes that the phrase "or other clemency as may be available" must have been intended by Congress to refer to state clemency proceedings. That conclusion, however, is flawed for at least three reasons. First, in most of the states that offer clemency proceedings, the power of clemency is exercised by the governor, either alone or with the assistance of an advisory board. See id. Thus, most of those proceedings would, like the federal model, be classified as "executive" clemency proceedings. Second, Congress, at the time it drafted § 848(q)(8), could reasonably have anticipated the availability of "other" avenues for federal prisoners to obtain clemency. For example, history establishes that Presidents have, from time to

- 8 -

time, appointed boards to assist them in exercising their clemency authority.  E.g., Paul J. Haase, "Oh My Darling Clemency": Existing or Possible Limitations on the Use of the Presidential Pardon Power, 39 Am. Crim. L. Rev. 1287, 1302 (2002) (noting that "President Ford created a commission called the Presidential Clemency Board . . . to review and facilitate clemency for those individuals that committed crimes related to the Vietnam War."); Executive Order 9814, 11 Fed. Reg. 14,645 (1946) (order of President Truman establishing a three-member board to review convictions of persons under the Selective Training and Service Act of 1940 and to make recommendations for executive clemency).  Further, it is an open question whether Congress itself has clemency authority independent from the President.[4]  E.g., Todd David Peterson, Congressional Power Over Pardon &

_____

[4] The majority, citing Article II, § 2, cl. 1, of the Constitution, as well as the Supreme Court's decision in Schick v. Reed, 419 U.S. 256 (1974), suggests that Congress lacks authority to grant clemency to capital defendants.  Maj. Op. at 11, n.7.  It is true that Article II, § 2, cl. 1 confers upon the President the "Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment," and that such power "cannot be modified, abridged, or diminished by the Congress."  Schick, 419 U.S. at 266.  Significantly, however, these two sources are silent regarding Congress's own authority to grant clemency.  Although it can perhaps be argued that Article II, § 2, cl.1's "express grant of pardon authority to the President implicitly precludes Congress from exercising similar authority itself," "[t]his question has never been definitively resolved by the courts, and it is still a matter of dispute between the President and Congress."  Peterson, supra at 1268.  Moreover, Congress "has long held the power to pass private [amnesty] bills," Hoffstadt, supra at 609, and it is logical to conclude that the reference to "other clemency" in § 848(q)(8) includes this form of relief as well.  That Congress thought there were other avenues for federal clemency aside from executive clemency is further bolstered by the fact that § 848(q)(8), and its reference to "other clemency," was apparently drafted before the addition of § 848(q)(4)(B), and that subsection's inclusion of § 2254 habeas

- 9 -

<u>Amnesty: Legislative Authority in the Shadow of Presidential Prerogative</u>, 38 Wake Forest L. Rev. 1225, 1226 (2003) (noting that "no court has ever ruled on the issue [of] whether Congress has any authority . . to exercise the pardon power itself"); Brian M. Hoffstadt, <u>Normalizing the Federal Clemency Power</u>, 79 Tex. L. Rev. 561, 611-13 (2001) (suggesting that Congress can exercise clemency authority by passing individual clemency bills). Thus, it is reasonable to conclude that Congress's inclusion of the reference in § 848(q)(8) to "other clemency as may be available to the defendant" was intended to encompass these other potential forms of federal clemency, rather than state clemency proceedings. In other words, it is reasonable to conclude that Congress, in fashioning the language of § 848(q)(8) to encompass the broad range of proceedings that a federal capital defendant might utilize in order to obtain relief from his or her death sentence, intended to include not only federal executive clemency proceedings, but also other forms of federal clemency that might be available to such a defendant. Lastly, had Congress intended to provide federal funding to state capital defendants in state clemency proceedings, it could have done so in a simple and clear manner (e.g., "and proceedings for executive or other clemency, including state clemency proceedings, as may be available to the defendant"), rather than through a vague reference to "other clemency as may be available to the defendant."

petitioners among those entitled to the appointment of federally-funded counsel.

The legislative history, to the extent we need to rely on it, does nothing to negate the conclusion that Congress intended for § 848(q)(8) to encompass only federal proceedings. Section 848(q)(4)(B), which as noted provides for the appointment of federally-funded counsel to state capital prisoners seeking federal habeas relief, "was added to the bill very late in session and seemingly without floor debate." King v. Moore, 312 F.3d 1365, 1368 (11th Cir. 2002). In light of these circumstances, I agree with the Eleventh Circuit that it was "unlikely" that "Congress actually intended for section 848(q) to provide counsel, at federal expense, to state prisoners engaged in state proceedings." Id. In other words, absent some type of express indication that Congress intended the addition of § 848(q)(4)(B) to significantly broaden the scope of § 848(q)(8), it is unreasonable in my view for us to interpret § 848(q)(8) in such a manner.

Finally, it is noteworthy that three of the four circuits that have reviewed the precise question now before us have concluded that § 848(q)(8) does not encompass federally-appointed counsel's representation of a state capital prisoner in state proceedings. See Clark v. Johnson, 278 F.3d 459, 462-63 (5th Cir. 2002) (concluding that § 848(q)(8) does not provide for federally-appointed counsel in state clemency proceedings); House v. Bell, 332 F.3d 997, 999 (6th Cir. 2003) (reaching same conclusion with respect to state post-conviction proceedings); King, 312 F.3d at 1368 (reaching same conclusion with respect to state clemency proceedings); contra Hill v. Lockhart, 992 F.2d 801, 803 (8th Cir. 1993)

- 11 -

(concluding that § 848(q)(8) encompasses state clemency proceedings, but conditioning payment in part upon showing that state provided no avenues for compensation to counsel). Although the Eighth Circuit (which the majority cites with approval) reached a contrary result in Hill, its reasoning is not convincing. Instead of carefully parsing the language of § 848(q)(8), the Eighth Circuit looked to the language of § 848(q)(10), which allows for attorneys appointed under § 848(q) to receive compensation for "reasonably necessary services," and simply concluded that "§ 848(q) evidences a congressional intent to insure that indigent state petitioners receive 'reasonably necessary' competency and clemency services from appointed, compensated counsel." 992 F.2d at 803. Further, although the Eighth Circuit attempted to narrow the scope of its decision by holding that federal compensation was available for counsel only "as part of a non-frivolous, federal habeas corpus proceeding" and only when "state law provides no avenue to obtain compensation for these services," it did so again without any support in the language of § 848(q)(8). In short, the Eighth Circuit effectively performed a legislative function by molding § 848(q) to fit what it believed was a fair and equitable model for providing federally appointed and compensated counsel to state capital prisoners.

For these reasons, I conclude that Congress did not intend, through its enactment of § 848(q)(8), to provided federally-funded counsel to represent state capital defendants in state clemency proceedings. I therefore conclude that

Presson and Jackson are not entitled to compensation under § 848(q) for the services they performed in representing Hain in his state clemency proceedings, and would affirm the district court's ruling denying compensation.