(Slip Opinion) OCTOBER TERM, 2008 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HARBISON *v.* BELL, WARDEN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 07–8521.   Argued January 12, 2009—Decided April 1, 2009

After the Tennessee state courts rejected petitioner Harbison's conviction and death sentence challenges, the Federal District Court appointed a federal public defender to represent him in filing a habeas petition under 28 U. S. C. §2254. That petition was denied. Harbison then sought appointment of counsel for state clemency proceedings. Because Tennessee law no longer authorizes the appointment of state public defenders as clemency counsel, his federal counsel moved to expand the scope of her representation to include the state proceedings. In denying the motion, the District Court relied on Circuit precedent construing 18 U. S. C. §3599, which provides for the appointment of federal counsel. The Sixth Circuit affirmed.

*Held:*

  1. A certificate of appealability pursuant to 28 U. S. C. §2253(c)(1)(A) is not required to appeal an order denying a request for federally appointed counsel under §3599 because §2253(c)(1)(A) governs only final orders that dispose of a habeas corpus proceeding's merits. Pp. 2–3.

  2. Section 3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation. Pp. 3–14.

    (a) Section 3599(a)(2), which refers to both §2254 and §2255 proceedings, triggers the appointment of counsel for both state and federal postconviction litigants, and §3599(e) governs the scope of appointed counsel's duties. Thus, federally funded counsel appointed to represent a state prisoner in §2254 proceedings "shall also represent the defendant in such . . . proceedings for executive or other clemency as may be available to the defendant." §3599(e). Because state clemency proceedings are "available" to state petitioners who obtain sub-

Syllabus

section (a)(2) representation, the statute's plain language indicates that appointed counsel's authorized representation includes such proceedings. Moreover, subsection (e)'s reference to "proceedings for . . . other clemency" refers to state proceedings, as federal clemency is exclusively executive, while States administer clemency in various ways. The Government is correct that appointed counsel is not expected to provide each service enumerated in subsection (e) for every client. Rather, counsel's representation includes only those judicial proceedings transpiring "subsequent" to her appointment, which under subsection (a)(2) begins with the §2254 or §2255 "post-conviction process." Pp. 3–8.

(b) The Government's attempts to overcome §3599's plain language are not persuasive. First, our reading of the statute does not produce absurd results. Contrary to the Government's contention, a lawyer is not required to represent her client during a state retrial following postconviction relief because the retrial marks the commencement of new judicial proceedings, not a subsequent stage of existing proceedings; state postconviction proceedings are also not "subsequent" to federal habeas proceedings. Second, the legislative history does not support the Government's argument that Congress intended §3599 to apply only to federal defendants. Congress' decision to furnish counsel for state clemency proceedings reflects both clemency's role as the "'fail safe' of our criminal justice system," *Herrera* v. *Collins*, 506 U. S. 390, 415, and the fact that federal habeas counsel are well positioned to represent their clients in clemency proceedings. Pp. 8–14.

503 F. 3d 566, reversed.

STEVENS, J., delivered the opinion of the Court, in which KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. ROBERTS, C. J., and THOMAS, J., filed opinions concurring in the judgment. SCALIA, J., filed an opinion concurring in part and dissenting in part, in which ALITO, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–8521

_____

## EDWARD JEROME HARBISON, PETITIONER *v.* RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[April 1, 2009]

JUSTICE STEVENS delivered the opinion of the Court.

Petitioner Edward Jerome Harbison was sentenced to death by a Tennessee court in 1983. In 1997, after the state courts rejected challenges to his conviction and sentence, the Federal District Court appointed the Federal Defender Services of Eastern Tennessee to represent him in filing a petition for a writ of habeas corpus pursuant to 28 U. S. C. §2254.[1] During the course of that representation, counsel developed substantial evidence relating both to Harbison's culpability and to the appropriateness of his sentence. Although the courts did not order relief, the evidence proved persuasive to one Circuit Judge. See 408 F. 3d 823, 837–846 (CA6 2005) (Clay, J., dissenting).

Shortly after his habeas corpus petition was denied, Harbison requested counsel for state clemency proceedings. In 2006, the Tennessee Supreme Court held that state law does not authorize the appointment of state public defenders as clemency counsel. *State* v. *Johnson*,

---

[1] Federal Defender Services of Eastern Tennessee is a nonprofit organization established pursuant to the Criminal Justice Act of 1964, 18 U. S. C. §3006A(g)(2)(B).

No. M1987–00072–SC–DPE–DD *(per curiam),* 2006 Tenn. Lexis 1236, at *3 (2006). Thereafter, Harbison's federally appointed counsel moved to expand the authorized scope of her representation to include state clemency proceedings. Relying on Circuit precedent construing 18 U. S. C. §3599, which provides for the appointment of federal counsel, the District Court denied the motion, and the Court of Appeals affirmed. 503 F. 3d 566 (CA6 2007).

We granted certiorari, 554 U. S. ___ (2008), to decide two questions: (1) whether a certificate of appealability (COA) is required to appeal an order denying a request for federally appointed counsel pursuant to §3599, and (2) whether §3599(e)'s reference to "proceedings for executive or other clemency as may be available to the defendant" encompasses state clemency proceedings. We conclude that a COA is not necessary and that §3599 authorizes federally appointed counsel to represent clients in state clemency proceedings.

I

We first consider whether Harbison was required to obtain a COA to appeal the District Court's order. The State of Tennessee and the United States as *amicus curiae* agree with Harbison that he was not.

The District Court's denial of Harbison's motion to authorize his federal counsel to represent him in state clemency proceedings was clearly an appealable order under 28 U. S. C. §1291. See, *e.g., McFarland* v. *Scott*, 512 U. S. 849 (1994) (reviewing the Court of Appeals' judgment denying a petition for the appointment of counsel pursuant to the statute now codified at 18 U. S. C. §3599). The question is whether Harbison's failure to obtain a COA pursuant to 28 U. S. C. §2253(c)(1)(A) deprived the Court of Appeals of jurisdiction over the appeal.

Section 2253(c)(1)(A) provides that unless a circuit justice or judge issues a COA, an appeal may not be taken

from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." This provision governs final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention. See generally *Slack* v. *McDaniel*, 529 U. S. 473, 484–485 (2000); *Wilkinson* v. *Dotson*, 544 U. S. 74, 78–83 (2005). An order that merely denies a motion to enlarge the authority of appointed counsel (or that denies a motion for appointment of counsel) is not such an order and is therefore not subject to the COA requirement.

## II

The central question presented by this case is whether 18 U. S. C. §3599 authorizes counsel appointed to represent a state petitioner in 28 U. S. C. §2254 proceedings to represent him in subsequent state clemency proceedings. Although Tennessee takes no position on this question, the Government defends the judgment of the Court of Appeals that the statute does not authorize such representation.

We begin with the language of the statute. Section 3599, titled "Counsel for financially unable defendants," provides for the appointment of counsel for two classes of indigents, described, respectively, in subsections (a)(1) and (a)(2). The former states:

> "[I]n every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either—
> "(A) before judgment; or
> "(B) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

"shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f)."

Subsection (a)(2) states:

"In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f)."

The parties agree that subsections (a)(1) and (a)(2) make two different groups eligible for federally appointed counsel: (a)(1) describes federal capital defendants, while (a)(2) describes state and federal postconviction litigants, as indicated by its reference to both §2254 and §2255 proceedings.[2]

After subsections (b) through (d) discuss counsel's necessary qualifications, subsection (e) sets forth counsel's responsibilities. It provides:

"Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriations motions

---

[2] We note that §3599 uses the term "defendant" to describe postconviction litigants.

and procedures, and *shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.*"  (Emphasis added.)

Focusing on the italicized clause of subsection (e), Harbison contends that the plain language of the statute dictates the outcome of this case.  We are persuaded by his argument.

Under a straightforward reading of the statute, subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties.  See §3599(a)(2) (stating that habeas petitioners challenging a death sentence shall be entitled to "the furnishing of . . . services in accordance with subsections (b) through (f)").  Thus, once federally funded counsel is appointed to represent a state prisoner in §2254 proceedings, she "shall also represent the defendant in such . . . proceedings for executive or other clemency as may be available to the defendant."  §3599(e).  Because state clemency proceedings are "available" to state petitioners who obtain representation pursuant to subsection (a)(2), the statutory language indicates that appointed counsel's authorized representation includes such proceedings.

The Government contends that, fairly read, the statute as a whole is intended to furnish representation only in federal proceedings and that all proceedings listed in subsection (e), including clemency proceedings, should be understood to be federal.  The absence of the word "federal" in this subsection is not dispositive, it maintains, because subsection (a)(1) likewise does not use the word "federal" yet the parties agree that provision concerns only federal defendants.  Just as "federal" is implied by context in subsection (a)(1), so too, the Government says, is it implied in subsection (e).  According to the Government,

the repeated use of the word "available" supports this reading: Congress contemplated that not all catalogued proceedings would be available to any given client, and clemency proceedings are simply not available to state petitioners because they are ineligible for federal clemency.

The Government's argument is not convincing. Subsection (a)(1) is properly understood as describing federal defendants because the statute is primarily concerned with federal criminal actions[3] and (a)(1) includes no language suggesting that it applies more broadly. By contrast, subsection (a)(2) refers to state litigants, and it in turn provides that subsection (e) applies to such litigants. There is therefore no basis for assuming that Congress intended "proceedings for executive or other clemency as may be available to the defendant" in subsection (e) to indicate only federal clemency.

To the contrary, the reference to "proceedings for executive *or other* clemency," §3599(e) (emphasis added), reveals that Congress intended to include state clemency proceedings within the statute's reach.[4] Federal clemency is exclusively executive: Only the President has the power to grant clemency for offenses under federal law. U. S. Const., Art. II, §2, cl. 1.[5] By contrast, the States adminis-

_____

[3] As we discuss below, §3599 was originally enacted as part of a statute creating a new federal capital offense, Anti-Drug Abuse Act of 1988, §7001(b), 102 Stat. 4388, and it is now codified in Title 18, which principally addresses federal criminal proceedings.

[4] JUSTICE SCALIA argues that subsection (e), including the reference to "other clemency," was drafted to apply only to federal defendants, but this is not correct, as we discuss *infra*, at 10–12.

[5] The Government suggests that Congress might have referred to "other clemency" to encompass the Executive's use of other persons to assist him in reviewing clemency applications. But as the Government concedes, see Tr. of Oral Arg. 43—and as Members of Congress would have known—regardless of what assistance the President seeks, the federal proceeding is one for executive clemency under the Constitu-

ter clemency in a variety of ways. See, *e.g.*, Ga. Const., Art. IV, §2 (independent board has clemency authority); Nev. Const., Art. 5, §14 (governor, supreme court justices, and attorney general share clemency power); Fla. Const., Art. IV, §8 (legislature has clemency authority for treasonous offenses); *McLaughlin* v. *Bronson*, 206 Conn. 267, 271, 537 A. 2d 1004, 1006–1007 (1988) ("In Connecticut, the pardoning power is vested in the legislature, which has delegated its exercise to the board of pardons" (citation omitted)). Congress' reference to "other clemency" thus does not refer to federal clemency but instead encompasses the various forms of state clemency.[6]

The Government's reliance on the word "available" is also misplaced. While it maintains that Congress' repeated use of the word shows that various §3599(e) procedures do not apply to particular indigents, the term instead indicates the breadth of the representation contemplated. The directive that counsel "shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available postconviction process," for example, hardly suggests a limitation on the scope of representation.

The Government is correct that appointed counsel is not

———————

tion.

[6] We also note that the Government's proposal to read the word "federal" into §3599(e) would lead to absurd results. It is clear, for example, that a state inmate faced with an imminent execution might be required to apply for a stay from a state court before seeking such relief in a federal court. On our reading of the statute, federally appointed counsel would be permitted to represent her client pursuant to subsection (e)'s reference to "applications for stays of execution and other appropriate motions and procedures." But on the Government's reading, the inmate would have to secure new counsel to file the stay request because his federal counsel would not be authorized to represent him. Such a rigid limit on the authority of appointed federal counsel would be inconsistent with the basic purpose of the statute. Cf. *McFarland* v. *Scott*, 512 U. S. 849, 854–857 (1994).

expected to provide each service enumerated in subsection (e) for every client. But that limitation does not follow from the word "available"; it follows from the word "subsequent" and the organization of subsection (e) to mirror the ordinary course of proceedings for capital defendants. Counsel's responsibilities commence at a different part of subsection (e) depending on whether she is appointed pursuant to subsection (a)(1)(A), (a)(1)(B), or (a)(2). When she is appointed pursuant to (a)(1)(A), she is charged with representing her client in all listed proceedings. When she is appointed pursuant to (a)(1)(B) (*i.e.*, after the entry of a federal death sentence), her representation begins with "appeals." And when she is appointed pursuant to (a)(2), her representation begins with the §2254 or §2255 "postconviction process." Thus, counsel's representation includes only those judicial proceedings transpiring "subsequent" to her appointment. It is the sequential organization of the statute and the term "subsequent" that circumscribe counsel's representation, not a strict division between federal and state proceedings.

### III

In an attempt to overcome the plain language of §3599, the Government advances two additional arguments that merit discussion. First, it contends that a literal reading of subsection (e) would lead to unacceptable results: It would require a federal lawyer who obtained relief for her client in §2254 proceedings to continue to represent him during his state retrial; similarly, it would require federal counsel to represent her client in any state habeas proceeding following her appointment. Second, the Government claims that the statute's legislative history shows that Congress did not intend to include state clemency proceedings within §3599(e)'s coverage. Neither argument is persuasive.

The Government suggests that reading §3599(e) to

authorize federally funded counsel for state clemency proceedings would require a lawyer who succeeded in setting aside a state death sentence during postconviction proceedings to represent her client during an ensuing state retrial. We do not read subsection (e) to apply to state-court proceedings that follow the issuance of a federal writ of habeas corpus. When a retrial occurs after postconviction relief, it is not properly understood as a "subsequent stage" of judicial proceedings but rather as the commencement of new judicial proceedings. Moreover, subsection (a)(2) provides for counsel only when a state petitioner is unable to obtain adequate representation. States are constitutionally required to provide trial counsel for indigent defendants. Thus, when a state prisoner is granted a new trial following §2254 proceedings, his state-furnished representation renders him ineligible for §3599 counsel until the commencement of new §2254 proceedings.

The Government likewise argues that our reading of §3599(e) would require federally funded counsel to represent her client in any state habeas proceeding occurring after her appointment because such proceedings are also "available post-conviction process." But as we have previously noted, subsection (e) authorizes counsel to represent her client in "subsequent" stages of available judicial proceedings. State habeas is not a stage "subsequent" to federal habeas. Just the opposite: Petitioners must exhaust their claims in state court before seeking federal habeas relief. See §2254(b)(1). That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute.[7]

--------

[7] Pursuant to §3599(e)'s provision that counsel may represent her client in "other appropriate motions and procedures," a district court may

The Government also argues that §3599(e) should not be interpreted as including state-clemency proceedings because it was drafted to apply only to federal defendants. Section 3599 was originally enacted as part of the Anti-Drug Abuse Act of 1988, §7001(b), 102 Stat. 4388 (codified at 21 U. S. C. §§848(q)(4)–(10)), which created a federal capital offense of drug-related homicide. In 2006, the death penalty procedures specified in that Act were repealed and recodified without change at 18 U. S. C. §3599. Based on the 1988 legislative history, the Government argues that subsection (e) was not written to apply to state petitioners at all. In its telling, the subsection was drafted when the bill covered only federal defendants; state litigants were added, by means of what is now subsection (a)(2), just a few hours before the bill passed in rushed end-of-session proceedings; and Congress simply did not attend to the fact that this amendment applied what is now subsection (e) to state litigants.

While the legislative history is regrettably thin, the evidence that is available does not support the Government's argument. State petitioners were a part of the Anti-Drug Abuse Act from the first day the House of Representatives took up the bill. In the amendment authorizing the death penalty for drug-related homicides, Representative George Gekas included a provision that closely resembles the current §3599(a)(2): "In any post-conviction proceeding under *section 2254* or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, the court shall appoint counsel to represent any defendant who is or becomes financially unable to obtain adequate representation." 134 Cong. Rec. 22984 (1988)

---

determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation. This is not the same as classifying state habeas proceedings as "available post-conviction process" within the meaning of the statute.

(emphasis added).

Following passage of the Gekas amendment, Representative John Conyers proposed replacing its provisions on appellate and collateral process (including the above-quoted provision) with language comprising the provisions now codified at §§3599(a)(1), (b), (c), and (e). Because his amendment introduced the §3599(e) language and did not refer specifically to §2254 proceedings, the Government and JUSTICE SCALIA argue that Representative Conyers drafted subsection (e) to apply only to federal defendants. But his floor statements evince his particular concern for state prisoners. He explained that his amendment filed a gap because "[w]hile State courts appoint lawyers for indigent defendants, there is no legal representation automatically provided once the case i[s] appealed to the Federal level." *Id.*, at 22996.[8] He then cited discussions by the Chief Judge of the Eleventh Circuit and the NAACP devoted exclusively to errors found by federal courts during habeas corpus review of state capital cases. *Ibid.*

In the Senate, Representative Conyers' language was first replaced with Representative Gekas' provision for counsel for §2254 and §2255 petitioners, and then a subsequent amendment substituted the text of the Conyers amendment. See *id.*, at 30401, 30746. Thereafter, the House amended the bill a final time to insert the language now codified at §3599(a)(2) while leaving the Conyers

———————

[8] Despite his reference to "defendants" and "appealed," Representative Conyers was clearly discussing state prisoners seeking federal habeas relief. Representative Gekas' amendment similarly referred to postconviction litigants as "defendants," and the relevant portion of his amendment was titled "Appeal in Capital Cases" even though it incorporated §2254 and §2255 proceedings. 134 Cong. Rec. 22984. As codified, §3599(a)(2) likewise uses the term "defendant" to refer to habeas petitioners. The Government is incorrect to suggest that the statute's use of this term illustrates that it was not written to apply to postconviction litigants.

language in place. See *id.*, at 33215. The Government argues that this late amendment marked the first occasion on which state prisoners were brought within the bill's compass. But Representative Gekas' initial amendment explicitly referenced §2254 petitioners, and Representative Conyers' proposal sought to provide additional protections for all capital defendants. The House's final amendment is therefore best understood not as altering the bill's scope, but as clarifying it.

The Government's arguments about §3599's history and purposes are laced with the suggestion that Congress simply would not have intended to fund clemency counsel for indigent state prisoners because clemency proceedings are a matter of grace entirely distinct from judicial proceedings.[9] As this Court has recognized, however, "[c]lemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Herrera* v. *Collins*, 506 U. S. 390, 411–412 (1993) (footnote omitted). Far from regarding clemency as a matter of mercy alone, we have called it "the 'fail safe' in our criminal justice system." *Id.*, at 415.[10]

––––––––

[9] The Government also submits that providing federally funded counsel for state clemency proceedings would raise "unique federalism concerns." Brief for United States as *Amicus Curiae* 31. But Tennessee's position belies that claim. Following other States that have litigated the question, Tennessee has expressed "no view" on the statute's scope because it "has no real stake in whether an inmate receives federal funding for clemency counsel." Brief for Respondent 7; see also Brief for Current and Former Governors as *Amici Curiae* 18 ("Contrary to the view of the Solicitor General . . . , the fact that counsel is appointed by a federal court does not reflect an intrusion on state sovereignty").

[10] See also *Kansas* v. *Marsh*, 548 U. S. 163, 193 (2006) (SCALIA, J., concurring) ("Reversal of an erroneous conviction on appeal or on habeas, or the pardoning of an innocent condemnee through executive clemency, demonstrates not the failure of the system but its success. Those devices are part and parcel of the multiple assurances that are

Congress' decision to furnish counsel for clemency pro-
ceedings demonstrates that it, too, recognized the impor-
tance of such process to death-sentenced prisoners, and its
reference to "other clemency," §3599(e), shows that it was
familiar with the availability of state as well as federal
clemency proceedings. Moreover, Congress' sequential
enumeration suggests an awareness that clemency pro-
ceedings are not as divorced from judicial proceedings as
the Government submits. Subsection (e) emphasizes
continuity of counsel, and Congress likely appreciated that
federal habeas counsel are well positioned to represent
their clients in the state clemency proceedings that typi-
cally follow the conclusion of §2254 litigation.

Indeed, as the history of this case demonstrates, the
work of competent counsel during habeas corpus represen-
tation may provide the basis for a persuasive clemency
application. Harbison's federally appointed counsel devel-
oped extensive information about his life history and
cognitive impairments that was not presented during his
trial or appeals. She also litigated a claim under *Brady* v.
*Maryland,* 373 U. S. 83 (1963), based on police records
that had been suppressed for 14 years. One Court of
Appeals judge concluded that the nondisclosure of these
records "undermine[d] confidence in Harbison's guilty
verdict" because the evidence contained therein could have
supported a colorable defense that a third party murdered
the victim and that Harbison's codefendant falsely impli-
cated him. 408 F. 3d, at 840 (Clay, J., dissenting). Al-
though the Court of Appeals concluded that Harbison's
*Brady* claim was procedurally defaulted, the information
contained in the police records could be marshaled to-

---

applied before a death sentence is carried out"); *Dretke* v. *Haley*, 541
U. S. 386, 399 (2004) (KENNEDY, J., dissenting) ("Among its benign if
too-often ignored objects, the clemency power can correct injustices that
the ordinary criminal process seems unable or unwilling to consider").

gether with information about Harbison's background in a clemency application to the Tennessee Board of Probation and Parole and the Governor.

Harbison's case underscores why it is "entirely plausible that Congress did not want condemned men and women to be abandoned by their counsel at the last moment and left to navigate the sometimes labyrinthine clemency process from their jail cells." *Hain* v. *Mullin*, 436 F. 3d 1168 (CA10 2006) (en banc). In authorizing federally funded counsel to represent their state clients in clemency proceedings, Congress ensured that no prisoner would be put to death without meaningful access to the "'fail-safe'" of our justice system. *Herrera*, 506 U. S., at 415.

## IV

We conclude that a COA is not required to appeal an order denying a motion for federally appointed counsel. We further hold that §3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation. Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–8521

———————

## EDWARD JEROME HARBISON, PETITIONER *v.* RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[April 1, 2009]

CHIEF JUSTICE ROBERTS, concurring in the judgment.

I agree with much of the Court's opinion. 18 U. S. C. §3599(a)(2) entitles indigent federal habeas petitioners to appointed counsel "in accordance with" subsection (e). Subsection (e) specifies that the appointed counsel "shall represent the defendant throughout every subsequent stage of available judicial proceedings . . . and shall also represent the defendant in such . . . proceedings for executive or other clemency as may be available to the defendant." Nothing in the text of §3599(e) excludes proceedings for available *state* clemency, and, as the Court points out, there are good reasons to expect federal habeas counsel to carry on through state clemency proceedings. See *ante*, at 12–14.

At the same time, the "plain language of §3599," *ante*, at 8, does not fully resolve this case. The obligation in subsection (e) that the appointed counsel represent the defendant in "every subsequent stage of available judicial proceedings" is not on its face limited to "federal" proceedings, just as there is no such limitation with respect to clemency. Yet it is highly unlikely that Congress intended federal habeas petitioners to keep their federal counsel during subsequent state judicial proceedings. See *Hain* v. *Mullin*, 436 F. 3d 1168, 1178 (CA10 2006) (Briscoe, J., dissenting) ("[I]t cannot seriously be suggested that Con-

gress intended, in the event a state capital prisoner obtains federal habeas relief and is granted a new trial, to provide federally-funded counsel to represent that prisoner in the ensuing state trial, appellate, and post-conviction proceedings . . .").  Harbison concedes as much. Reply Brief for Petitioner 11–12; Tr. of Oral Arg. 5–6, 15.

If there were no way to read the words of the statute to avoid this problematic result, I might be forced to accept the Government's invitation to insert the word "federal" into §3599(e)—a limitation that would have to apply to clemency as well.  But fortunately the best reading of the statute avoids the problem: Section 3599(e)'s reference to "subsequent stage[s] of available judicial proceedings" does not include state judicial proceedings after federal habeas, because those are more properly regarded as new judicial proceedings.

The meaning of that phrase is not entirely plain, but it is plain that not every lawsuit involving an inmate that arises after the federal habeas proceeding is included. Surely "subsequent stage[s]" do not include, for example, a challenge to prison conditions or a suit for divorce in state court, even if these available judicial proceedings occur subsequent to federal habeas.  That must be because these are new proceedings rather than "subsequent stage[s]" of the proceedings for which federal counsel is available. Once it is acknowledged that Congress has drawn a line at some point, this is the "best reading" of the statutory language.  *Post*, at 3 (THOMAS, J., concurring in judgment).

JUSTICE THOMAS does not disagree.  Instead, he contends that it is not necessary to decide what the first part of the sentence means in deciding what the second part means.  *Post*, at 4.  We have said that "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole."  *United States* v. *Morton*, 467 U. S. 822, 828 (1984).  This certainly applies to reading sentences as a whole.

ROBERTS, C. J., concurring in judgment

I entirely agree with JUSTICE THOMAS that "Congress' intent is found in the words it has chosen to use," and that "[o]ur task is to apply the text, not to improve upon it," even if that produces "very bad policy." *Post*, at 3 (internal quotation marks omitted). Here, we need only apply the text of §3599 to conclude that federal counsel is available for state clemency, but not for subsequent state court litigation. I therefore concur in the result.

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–8521

———————

## EDWARD JEROME HARBISON, PETITIONER *v.* RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[April 1, 2009]

JUSTICE THOMAS, concurring in the judgment.

I agree that under 28 U. S. C. §2253(c)(1)(A), a certificate of appealability was not required to seek appellate review of the issue in this case. See *ante*, at 2–3; see also *post*, at 1 (SCALIA, J., concurring in part and dissenting in part). I further agree with the Court that 18 U. S. C. §§3599(a)(2) and (e) entitle eligible state postconviction litigants to federally funded counsel in available state clemency proceedings. See *ante*, at 2, 5. As even JUSTICE SCALIA acknowledges in his dissenting opinion, the statute "contains no express language limiting its application to proceedings in a federal forum." *Post*, at 8; see also *ante*, at 1 (ROBERTS, C. J., concurring in judgment) ("Nothing in the text of §3599(e) excludes proceedings for available *state* clemency . . ."). By its express terms, the statute "entitle[s]" eligible litigants to appointed counsel who "shall represent the defendant . . . in such . . . proceedings for executive or other clemency as may be available to the defendant." §§3599(a)(2), (e). Because the statute applies to individuals challenging either state or federal convictions, see §3599(a)(2), and because state clemency is the only clemency available to those challenging state convictions, §§3599(a)(2) and (e) necessarily entitle eligible state postconviction litigants to federally funded counsel in state clemency proceedings.

I disagree, however, with the assumption that §3599 must be limited to "federal" proceedings in at least some respects. *Ante*, at 6; *ante*, at 1–2 (ROBERTS, C. J., concurring in judgment); *post*, at 3–4. The majority and dissent read such a limitation into subsection (a)(1) of the statute. But that subsection, like subsection (a)(2), "contains no language limiting its application to *federal* capital defendants. It provides counsel to indigent defendants in '*every* criminal action in which a defendant is charged with a crime which may be punishable by death.'" *Post*, at 3 (quoting §3599(a)(1)). The majority, then, compounds its error by attempting to discern some distinction between subsections (a)(1) and (a)(2), to which it properly declines to add an extratextual "federal" limitation, see *ante*, at 5–6. The dissent seizes on this inconsistency between the majority's interpretation of subsections (a)(1) and (a)(2), but responds by incorrectly reading a parallel "federal" limitation into subsection (a)(2), see *post*, at 3–4. In the dissent's view, "it is perfectly reasonable to assume" that subsection (a)(2) is limited to federal postconviction proceedings—including clemency proceedings—"even where the statute contains no such express limitation." *Post,* at 3.

THE CHIEF JUSTICE, in contrast, finds a "federal" limitation in a clause of subsection (e) that is not before this Court in order to cabin the reach of today's decision. He observes that the text of subsection (e) includes no "federal" limitation with respect to any of the proceedings listed in that subsection. But THE CHIEF JUSTICE finds a way to avoid this "problematic result" by adding a different limitation to §3599. In his view, the "best" reading of the phrase "subsequent stage[s] of available judicial proceedings" is one that excludes "state judicial proceedings after federal habeas" proceedings because they are "new"—not "subsequent"—judicial proceedings. *Ante*, at 2. Without this limitation, THE CHIEF JUSTICE explains, "[he]

might be forced to accept the Government's invitation to insert the word 'federal' into §3599(e)—a limitation that would have to apply to clemency as well"—because he finds it "highly unlikely that Congress intended" for there to be no federal limitation at all in subsection (e). *Ante,* at 1–2.

This Court is not tasked with interpreting §3599 in a way that it believes is consistent with the policy outcome intended by Congress. Nor should this Court's approach to statutory construction be influenced by the supposition that "it is highly unlikely that Congress intended" a given result. See *ante,* at 1 (ROBERTS, C. J., concurring in judgment). Congress' intent is found in the words it has chosen to use. See *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 98 (1991) ("The best evidence of [Congress'] purpose is the statutory text adopted by both Houses of Congress and submitted to the President"). This Court's interpretive function requires it to identify and give effect to the best reading of the words in the provision at issue. Even if the proper interpretation of a statute upholds a "very bad policy," it "is not within our province to second-guess" the "wisdom of Congress' action" by picking and choosing our preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute. *Eldred* v. *Ashcroft*, 537 U. S. 186, 222 (2003); see also *TVA* v. *Hill*, 437 U. S. 153, 194 (1978) ("Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute"). "Our task is to apply the text, not to improve upon it." *Pavelic & LeFlore* v. *Marvel Entertainment Group, Div. of Cadence Industries Corp.*, 493 U. S. 120, 126 (1989).

This statute's silence with respect to a "federal" limitation in no way authorizes us to assume that such a limitation must be read into subsections (a) and (e) in order to

blunt the slippery-slope policy arguments of those opposed to a plain-meaning construction of the provisions under review, see *ante*, at 8–9. And Congress' silence certainly does not empower us to go even farther and incorporate such an assumption into the text of these provisions. *Post*, at 7–8. Moreover, the Court should not decide a question irrelevant to this case in order to pre-empt the "problematic" results that might arise from a plain-text reading of the statutory provision under review. See *ante*, at 2 (ROBERTS, C. J., concurring in judgment). Whether or not THE CHIEF JUSTICE's construction of the "subsequent stage of available judicial proceedings" clause of subsection (e) is correct, it is irrelevant to the proper interpretation of the clemency clause of subsection (e). Even if the statute were to authorize federal postconviction counsel to appear in state proceedings other than state clemency proceedings, a question not resolved by today's decision, that conclusion would not provide a legitimate basis for adopting the dissent's atextual interpretation of the clemency clause of subsection (e). The "best" interpretation of the clemency clause does not turn on the unresolved breadth of the "subsequent stage of available judicial proceedings" clause.

Rather, the Court must adopt the interpretation of the statute that is most faithful to its text. Here, the absence of a "federal" limitation in the text of subsections (a) and (e) of §3599 most logically suggests that these provisions are not limited to federal clemency proceedings. "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think is the preferred result." *Lamie* v. *United States Trustee*, 540 U. S. 526, 542 (2004) (internal quotation marks and ellipses omitted). Accordingly, I concur in the judgment.

# SUPREME COURT OF THE UNITED STATES

No. 07–8521

EDWARD JEROME HARBISON, PETITIONER *v.*
RICKY BELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[April 1, 2009]

JUSTICE SCALIA, with whom JUSTICE ALITO joins, concurring in part and dissenting in part.

I agree with the Court that Harbison was not required to obtain a certificate of appealability under 28 U. S. C. §2253(c)(1)(A) before appealing the District Court's denial of his motion to expand counsel's appointment. See *ante*, at 2–3. I do not agree, however, that 18 U. S. C. §3599 gives state prisoners federally funded counsel to pursue state clemency. While purporting to adopt a "straightforward reading of the statute," *ante* at 5, the Court in fact selectively amends the statute—inserting words in some places, twisting their meaning elsewhere. Because the statute is most naturally and coherently read to provide federally funded counsel to capital defendants appearing in a federal forum, I would affirm the decision of the Sixth Circuit and hold that Harbison was not entitled to federally funded counsel to pursue state clemency.

## I

Title 18 U. S. C. §3599(a)(2) provides for the appointment of counsel as follows:

> "In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate

representation or investigative, expert, or other rea-
sonably necessary services shall be entitled to the ap-
pointment of one or more attorneys and the furnishing
of such other services in accordance with subsections
(b) through (f).

Section 3599(e) defines the scope of appointed counsel's
representation:

"Unless replaced by similarly qualified counsel upon
the attorney's own motion or upon motion of the de-
fendant, each attorney so appointed shall represent
the defendant throughout every subsequent stage of
available judicial proceedings, including pretrial pro-
ceedings, trial, sentencing, motions for new trial, ap-
peals, applications for writ of certiorari to the Su-
preme Court of the United States, and all available
post-conviction process, together with applications for
stays of execution and other appropriate motions and
procedures, and shall also represent the defendant in
such competency proceedings and proceedings for ex-
ecutive or other clemency as may be available to the
defendant."

As the Court notes, the first of these provisions entitled
Harbison to counsel for §2254 proceedings. And the sec-
ond of them, without any express qualification, provides
for counsel's continued representation through "such . . .
proceedings for executive or other clemency as may be
available to the defendant," which in petitioner's case
would include state clemency proceedings. The Court thus
concludes that the statute's "plain language" provides
Harbison federally funded counsel to represent him in
state clemency proceedings. *Ante*, at 5.

But the Court quickly abandons its allegedly "plain"
reading of the statute when it confronts the subsection
that precedes these two, which provides:

"Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either–

    "(A) before judgment; or

    "(B) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

"shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f)." §3599(a)(1).

The Court states that "(a)(1) describes federal capital defendants." *Ante,* at 4. But according to the Court's mode of analysis, that is not so. Subsection (a)(1), like subsection (e), contains no language limiting its application to *federal* capital defendants. It provides counsel to indigent defendants in "*every* criminal action in which a defendant is charged with a crime which may be punishable by death." §3599(a)(1) (emphasis added). Why, then, is subsection (a)(1) limited to *federal* capital defendants? Because, as the Court notes, "the statute is primarily concerned with federal criminal actions and (a)(1) includes no language suggesting that it applies more broadly." *Ante*, at 6 (footnote omitted).

   Quite right. Section 3599 was enacted as part of a bill that created a new federal capital offense, see *ibid.*, n. 3, and it is perfectly reasonable to assume that a *federal* statute, providing *federally* funded counsel, applies in *federal* proceedings only, even where the statute contains no such express limitation. Cf. *Barron ex rel. Tiernan* v. *Mayor of Baltimore*, 7 Pet. 243, 247–248 (1833). But there

is no basis for adopting that reading with respect to only *half* the statute. If subsection (a)(1) is limited to federal proceedings, then subsection (e), which likewise contains no express federal limitation, is similarly limited. We cannot give the same silence (omission of the limiting word "federal") in adjacent and simultaneously enacted subsections of the same law (§3599) divergent meanings.

The Court advances two arguments for reading subsection (e) more broadly. First, it claims that unlike subsection (a)(1), "subsection (a)(2) refers to state litigants." *Ante*, at 6. It most certainly does not. It refers to *proceedings* under §2254 and §2255—proceedings under *federal* statutes providing *federal* causes of action in *federal* court. Read together, subsections (a)(1) and (a)(2) provide federally funded counsel for persons convicted of capital crimes who are appearing in federal court. Subsection (a)(2) neither undermines the Court's earlier statement that "the statute's primary focus is federal" proceedings, nor gives the Court license to insert words selectively into the statutory text.

The Court next reasons that the phrase "executive or *other* clemency" suggests that subsection (e) includes state clemency proceedings. Since (the argument goes) federal clemency is exclusively executive, the word "other" must refer to state clemency, or else it would be superfluous. But the drafting history, which the Court thinks relevant, *ante*, at 10–11, defeats the inference the Court wishes to draw. The current text of subsection (e) first appeared in a version of the bill that included what is now subsection (a)(1) (which the Court concedes deals only with federal proceedings), but *not* subsection (a)(2) (which the Court would deem applicable to state proceedings). 134 Cong. Rec. 22995 (1988). In other words, at the time of its introduction, subsection (e) applied only to federal defendants, and the phrase "or other clemency" was unquestionably superfluous.

In any event, the Court's reading places a great deal of weight on avoiding superfluity in a statute that is already teeming with superfluity. Item: Subsection (a)(2) needlessly refers to §2255 proceedings even though subsections (a)(1) and (e) taken together would provide federal capital defendants with counsel in §2255 proceedings. Item: Subsection (a)(2) provides counsel "in accordance with subsections (b) through (f)" even though subsections (b) and (c) have no conceivable relevance to subsection (a)(2).* Item: Subsection (e) provides counsel "throughout every subsequent stage of *available* judicial proceedings," including "all *available* post-conviction process" (emphasis added). The first use of the term "available" is already of dubious value (is counsel expected to represent a defendant in *unavailable* proceedings?) but its needless repetition is inexplicable. In a statute that is such a paragon of shoddy draftsmanship, relying upon the superfluity of "or other" to extend the statute's application from federal to state proceedings is quite absurd—and doubly absurd when that extension is illogically limited to the subsection in which "or other" appears.

## II

The Court's reading of subsection (e) faces a second substantial difficulty. Subsection (e) provides that counsel, once appointed,

> "shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for

---

*Subsection (b) details the requisite qualifications for a lawyer appointed "before judgment"; but appointments under subsection (a)(2) are made only after judgment. Subsection (c) requires that a lawyer appointed after judgment have been "admitted to practice *in the court of appeals* for not less than five years" (emphasis added); but the postconviction proceedings dealt with by subsection (a)(2) take place in federal *district court*.

new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures." §3599(e).

In other words, once counsel is appointed under (a)(2), petitioner is entitled to federal counsel "throughout every subsequent stage of available judicial proceedings." The Government argues that, if subsection (e) is not limited to federal proceedings, then a §2254 petitioner who obtains federally funded counsel will retain that counsel, at federal expense, in all "subsequent" state-court proceedings, including the retrial that follows the grant of federal habeas relief. The Court disagrees, on the ground that a new trial represents the "commencement of new judicial proceedings." *Ante,* at 9.

I need not enter that controversy. What is clear, at least, is that (if subsection (e) includes state proceedings) federally funded counsel would have to represent petitioners in subsequent state habeas proceedings. The Court tries to split the baby here, conceding that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust [in state court] a claim in the course of her federal habeas representation." *Ante,* at 9–10, n. 7. The Court tries to derive this discretionary authority from subsection (e)'s provision for representation by federal counsel in "other *appropriate* motions and procedures." §3599(e) (emphasis added). But that provision is *in addition to*, rather than *in limitation of*, subsection (e)'s unqualified statement that counsel "shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available post-conviction process." The provision then continues: "*together with* applications for stays of execution and other appropriate motions and procedures." (Emphasis added.)

There is no way in which this can be read to limit the requirement that counsel represent the defendant in "every subsequent stage of available judicial proceedings," which would include habeas proceedings in state court.

The Court seeks to avoid this conclusion by saying that "[s]tate habeas is not a stage 'subsequent' to federal habeas," because "[p]etitioners must exhaust their claims in state court before seeking federal habeas relief." *Ante*, at 9. This is a breathtaking denial of reality, confusing what *should be* with what *is*. It is rather like saying that murder does not exist because the law forbids it. To be sure, petitioners are *supposed to* complete state postconviction proceedings before pursuing relief in federal court. But they often do not do so, and when they do not our opinions permit them to seek stays or dismissals of their §2254 petitions in order that they may thereafter *(subsequently)* return to state court to exhaust their claims. See *Rhines* v. *Weber*, 544 U. S. 269, 277–278 (2005); *Pliler* v. *Ford*, 542 U. S. 225, 228 (2004). Additionally, inmates may—as petitioner did in this case—file successive state habeas petitions after §2254 proceedings are complete. See *Harbison* v. *State*, No. E2004–00885–CCA–R28–PD, 2005 WL 1521910, *1 (Tenn. Crim. App., June 27, 2005). These subsequent state proceedings are not rare but commonplace, and it is inconceivable (if state proceedings are covered) that subsection (e) does not refer to them. Indeed, one would think that subsection (e) refers especially to them. And what kind of an incoherent statute would it be that allows counsel for *de-facto*-subsequent federal habeas claims that *should have been* brought earlier (see §3599(a)(2)) but does not allow counsel for subsequent state habeas claims that have the same defect?

If §3599(e) includes state proceedings (as the Court holds), and if "subsequent" is given its proper scope (rather than the tortured one adopted by the Court)—then §3599(a)(2)'s limitation of federally provided counsel to

only *federal* habeas proceedings would amount to a dead letter. A capital convict could file for federal habeas without first exhausting state postconviction remedies, obtain a stay or dismissal of that federal petition, and return to state court along with his federally funded lawyer. Indeed, under our decision in *McFarland* v. *Scott*, 512 U. S. 849 (1994), he need not even file an unexhausted federal habeas petition; he can file a stand-alone "motion requesting the appointment of habeas counsel," *id.*, at 859, and obtain federally funded counsel that he can then take back for the subsequent state proceedings. The question persists: Why would §3599(a)(2) provide counsel in only *federal* habeas proceedings, when §3599(e) makes it so easy to obtain federally funded counsel for *state* habeas proceedings as well?

\* \* \*

Concededly, §3599 contains no express language limiting its application to proceedings in a federal forum. And yet Harbison, the Government, and the Court all read part of that section to refer to federal proceedings only. The Court's refusal to extend that limitation to the entirety of §3599 is untenable. It lacks a textual basis and has the additional misfortune of producing absurd results, which the majority attempts to avoid by doing further violence to the statutory text. I would read the statute as providing federal counsel to capital convicts appearing in a federal forum, and I accordingly would affirm the judgment of the Sixth Circuit.